## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

---

Estate of Khia Edgerton (85091)

*Plaintiff*

V.

UPI Holdings, Inc. D/B/A/ Unruly
Records, et. al

*Defendants*

Case 1:09-CV-O1825-CCB

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**INTRODUCTION** ………………………………………………………………... 2

**FACTS** ……….…………………………………………………………………… 2

**PROCEDURAL HISTORY**……………………………………….…………….. 5

**APPLICABLE STANDARD**…………………………………….…..…………... 6

*Federal Rule of Procedure* 12(b)(1) ……………………………...……………… 6

*Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 768 (4th Cir. 1991)... 6

*Biktasheva v. Red Square Sports Inc.*, 336 F. Supp. 294(D. Md. 2005) ……………... 6

*Conley v. Gibson*, 355 U.S. 41 (1957) …………………………………..…………….. 6

*U.S. v. Jadhav*, 55 F.3d 337(4th Cir. 2007) …………………………………..………… 6

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ………………………………………... 7

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) …………………………………… 7

*Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213 (4th Cir.1994) …. 7

*Migdal v. Rowe Price –Fleming Int'l*, 248 F.3d 321 (4th Cir. 2001)…………………… 7

*Mylan Lab. Inc. v. Pharm. Basics, Inc.*, 808 F.Supp. 446 (D. Md. 1992) …………...… 7

*Aschcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009) …………………………..…………… 7

I.      **PLAINTIFF'S ALLEGATIONS OF COPYRIGHT INFRINGMENT FAIL
        TO ALLEGE FACTS SUFFICENT TO CONFER FEDERAL
        JURISDICTION OR STATE A CLAIM FOR RELIEF** ………………....... 8

        A.  **Subject Matter Jurisdiction**…………………………………….…... 8

28 U.S.C. § 1338………………………………………………………………… 8

*Arthur Young & Co. v. City of Richmond*, 895 F.2d 967 (4th. Cir. 1990) …………… 8

*T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d. Cir. 1964) …...……………………….. 8

*Vestron v. Home Box Office*, 839 F.2d 1380 (9th Cir. 1988) ……………………..….. 9

    1.  **Federal Copyright Registration is Required to Confer Standing for Copyright Infringement under the Copyright Act** ………..……………..…   **10**

17 U.S.C. § 411(a) …………….……………………………...…….…………..   **10**

*Mays Assoc. Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md. 2005) …..……………….....   **11**

*Smoot v. Simmons*, No. 05-3106, 2006 U.S. Dist. LEXIS 51561 (D. Md. 2006) ..…….   **11**

*Blazer & Assoc. v. Union Bank and Trust,* 2009 U.S. Dist Lexis 49710 …………….....   **11**

*Home & Nature Inc., v. Sherman Specialty Co.,* 322 F. Supp. 2d 260 (E.D.N.Y. 2004) ..   **11**

*Scholz Design Inc., v. Zimmerman*, 2009 U.S. District LEXIS 62689 ...………………   **11**

    2.  **Absent Its Claim for Infringement, Plaintiff's Remaining Copyright Claims are Governed by Maryland Common Law** ………………………....   **12**

*Young v. City of Richmond*, 895 F.2d 967 (4th Cir. 1990) ……………………………   **12**

*Vestron v. Home Box Office*, 839 F.2d 1380 (9th Cir. 1988) ……………………..…..   **12**

    B.  **Failure to State a Claim Upon Which Relief Can be Granted** ……...……   **13**

*Feist Publ'n, Inc. v. Rural Tele. Serv. Co. Inc.,* 499 U.S. 340 (1991) ………………   **13**

    1.  **Plaintiff has Failed to Properly Plead Ownership of a Valid Copyright** ..   **14**

*Compaq Computer Co. v. Ergonome Inc.,* 387 F.3d 403 (5th Cir. 2004) ……………....   **14**

*Darden v. Peters*, 488 F.3d 277 (4th Cir. 2007) ……………………………………   **14**

    *i.*      ***Ms. Edgerton's work is not original*** …………………………………   **14**

17 U.S.C. § 102(a)(7) ..………………………………………………………………   **14**

*Darden v. Peters*, 488 F.3d 277 (4th Cir. 2007) ……………………………………   **14**

    *ii.*    ***Plaintiff fails to provide notice of which alleged "copyrights" have been infringed by Defendants*** ……………………………………..   **15**

17 U.S.C. § 102(a)(2), (a)(7) ……………………………………...………………   **15**

    *iii.*   ***Plaintiff failed to comply with the statute***................................................   **15**

    *2.* **Plaintiff Fails to Allege Facts Sufficient to Establish Copying of Original Elements of the Work**  …………….…..……………………………………   **16**

    *i.*     *Plaintiff must substantiate a time line to properly allege infringement* ..   **17**

**II.**   **PLAINTIFF'S ALLEGATIONS OF TRADEMARK INFRINGMENT FAIL TO ALLEGE FACTS SUFFICENT TO CONVEY FEDERAL JURISDICTION OR STATE A CLAIM FOR RELIEF** …………..……...   **18**

    **A.**   **Subject Matter Jurisdiction** ………………………………………   **18**

*Taylor v. Anderson*, 234 U.S. 74 (1914) ……………………………………………   **18**

*United States v. North Carolina*, 180 F.3d. 574 (4th Cir. 1999) ……………...…...…   **18**

    **B.**   **Failure to State a Claim Upon Which Relief Can be Granted** ………   **19**

*Lone Star Steakhouse & Saloon Inc.  v. Alpha of Virginia*, 43 F.3d 992 (4th Cir. 1995) ...   **19**

    **1.**   **Plaintiff fails to substantiate a valid and protectable mark** ………...   **20**

    *i.*     *Lack of Registration* ………………………………………………..   **20**

15 U.S.C. §1114(a) ………………………………………………………...….   **20**

    **ii.**     *Protectability of an unregistered mark* …………………………………   **20**

15 U.S.C. § 1125(a) ………………………………………………………...…..   **20**

*B & J Enterprises LTD.  v. Giordano*, 2009 U.S. App. Lexis 10564. (4th Cir. 2009) .….   **21**

    **2.**   **Plaintiff Fails To Establish Infringement Under The Act** …...……….   **21**

*Dastar Corp. v. Twentieth Century Fox Film Corp*, 539 U.S. 23 (2003) ………………..   **21**

**III.**   **PLAINTIFF'S ALLEGATIONS UNDER THE LANHAM ACT FAIL TO ALLEGE FACTS SUFFICENT TO CONFER FEDERAL JURISDICTION OR STATE A CLAIM FOR RELIEF FOR FRAUD UNDER THE LANHAM ACT**………………………………………………………..   **23**

    **A.**   **Subject Matter Jurisdiction** …..………………………………………   **23**

    **1.**   **Plaintiff's Allegation Of Fraud Does Not Cite The Lanham Act** …...….   **23**

15  U.S.C. §§ 1051 *et seq.* ………………………………………………………...   23

    2.  <u>**Plaintiff's Allegation Of Fraud Under The Lanham Act Is Without**</u>
<u>**Merit, As Count III Of Plaintiff's Complaint Pertains To Unregistered**</u>
<u>**Marks**</u>………………………………………………………………………   22

15 U.S.C. § 1120 …...………………………………………………………………   22

*Landstrom et al. v. Thorpe et al.*, 189 F.2d 46 (19510) …………………..……   23

    3.  <u>**Plaintiff's Allegation of "Fraud" is Premised on the Validity of Two**</u>
<u>**Contracts, Which are Governed by State Law**</u> …………………..……   24

    **B.**       **Failure to State a Claim Upon Which Relief Can be Granted** ............   24

    1.  <u>**Plaintiff Fails to Plead Registration of the Mark**</u> ……………………   25

15 U.S.C. § 1120 ……………………………………………………………………   25

    2.  <u>**Plaintiff Fails to Plead Fraud with Specificity, as Required by Federal**</u>
<u>**Rule of Civil Procedure 9(b)**</u> ………………………………………………   25

Federal Rule of Civil Procedure 9(b) ……………………………………………   25

*Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q. 2d 1203 (T.T.A.B. 1997 )…   25

*Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336 (Fed. Cir. 1997) ……   26

*Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46, 48 (Fed. Cir. 1986) …………………..   26

*Seidelmann Yachts, Inc. v. Pace Yacht Corp.,* 1989 U.S. Dist. LEXIS 17486, *30 (D. MD. 1989) ………………………...…………………………………………………   26

*Smith Int'l Inc, V. Olin Corp.*, 209 USPQ 1033, 1004 (T.T.A.B. 1981) ………………..   26

    *i.  Negligence, as alleged by Plaintiff, is not the requisite culpability to*
*substantiate fraud   under the Lanham Act* ..…………………………………..   27

*Metro Traffic Control*, 104 F.3d 336, 340 (Fed. Cir. 1997) ……………………...…….   27

*Ileto v. Glock Inc*. 565 F.3d 1126, 1155 (9th. Cir. 2009) …………………………………   27

*Symbol Techs Inc. v. Opticon Inc.*, 935 F. 2d 1569, 1582 (Fed. Cir. 1991) …………...   27

*ii. Plaintiff has not pled facts sufficient to establish Defendants acted "knowingly," as required by the Lanham Act.* …………………...……………….. **27**

*iii. Plaintiff fails to allege Defendants committed a fraudulent act under the Lanham Act* ………………………………………………………………………… **28**

*Proctor v. Metropolitan Money Store Corp.*, 579 F.Supp.2d 724, (D. Md. 2008)………………………………………………………………………………… **29**

    3.  <u>Plaintiff Fails To Allege Any Facts That Demonstrate Fraud On The Part Of Defendant Mr. Gardner</u> ……………………………………………… **30**

**CONCLUSION** …………………...……………………………………………… **30**

## INTRODUCTION

Paul W. Gardner, II (hereinafter "Mr. Gardner") respectfully submits the following Memorandum of Law in Support of his Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter "Memorandum"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant submits that Plaintiff's First Amended Complaint lacks subject matter jurisdiction and fails to state a claim upon which relief can be granted, and therefore Defendant requests an Order dismissing Plaintiff's claim with prejudice. For his cause, Defendant states the following:

## FACTS RELEVANT TO THIS MOTION

Plaintiff is the Estate of Ms. Khia Edgerton, as administered by Juanita Davis-Edgerton and Joseph Daniel Edgerton, Jr. (Compl. ¶ 9.) Ms. Khia Edgerton (hereinafter "Ms. Edgerton") died on July 21, 2008, when she fractured her neck in a diving accident at her Baltimore home. (Compl. ¶ 17.) Ms. Khia Edgerton was a popular Disc Jockey (hereinafter "DJ") who gained local notoriety for introducing local residents to "club music," a musical style indigenous to Baltimore, through her positions as a radio announcer for Baltimore radio stations and as a DJ for Baltimore nightclubs.[1]

Defendants Shawn Caesar (hereinafter "Mr. Caesar") and Scott Rice a/k/a Scottie B (hereinafter "Mr. Rice"), are also Baltimore club music pioneers. Both Defendants began their careers in the early 1980's, and became well recognized in Baltimore for

---

[1] A Disc Jockey is defined as, "(1) an announcer of a radio show that plays popular recorded music; *also* one who plays recorded music at a nightclub or party." Merriam Webster Online, http://www.merriam-webster.com/dictionary/disc jockey. Note that Plaintiff's complaint is devoid of any allegation that Ms. Edgerton was anything more than a DJ. There is no suggestion that she authored, composed or produced any of the lyrics or music embodied on the sound recordings subject to the complaint filed herein.

creating and producing Baltimore club music.  In 2004, Defendants Mr. Rice and Mr. Caesar formed Defendant, UPI Holdings, Inc. D/B/A Unruly Records, Unruly Productions, U Management (hereinafter "Unruly Records"),  to: (1) promote and manage popular Baltimore nightclub DJs; (2) author, create, and obtain musical "tracks" for Unruly Record's DJs to use and mix during nightclub performances; and (3) ultimately produce, record and distribute varied sound recordings.

In 2005, Ms. Edgerton and Defendants[2] entered into a contractual agreement (P. Exhibit 3).  Pursuant to the agreement, Ms. Edgerton and Defendants released sixteen (16) Baltimore Club Mix CDs, at a rate of approximately four (4) CDs per year.[3]  All CDs embody previously recorded Baltimore club music by local artists.  As the DJ, Ms. Edgerton's voice is also featured on the recordings.  She articulates the sequence of tracks on the CDs; credits the artists who wrote, produced, and composed the music on the recordings; and provides "intros" and "outros" for the songs contained therein.  Ms. Edgerton's mix CDs gained popularity with the patrons of "The Downtown Locker Room," a local clothing and athletic footwear retailer, where the mix CDs were played and sold.

As Baltimore club music gained national popularity and recognition, Defendants began negotiations with Koch Records to promote Baltimore club music nationally.  On

_____

[2]Defendants being Shawn Caesar, and Scott Rice. The acts as alleged by Plaintiff that pertain to Attorney Paul Gardner, II will be addressed in Part III of this Memorandum.  Defendant Unruly Records, as not been served.
[3]  A mix tape is a compilation of previously recorded music, re-recorded in a particular order.  As a popular DJ, Ms Edgerton became a local phenomenon for playing musical tracks, created by Baltimore musicians, on the radio and in night clubs and selling her "mix," i.e. sequences of <u>their music,</u> on her CD-ROMs.  See *Plaintiff's Exhibit 9*, acknowledging seven Baltimore artists with previously recorded songs on the albums referenced at issue, namely: Blaq Starr ("Tote It"), Rod Lee ("Ridaz"), Deonair Samir ("Eamon Joint") , King Tutt ("Shake My Ass Remix"), Say Wut ("Say Wut Theme Pt. 2") and DJ Class ("Next to You").

- 3 -

or about July 20, 2008, Defendants finalized the national distribution deal with Koch Records.  Ms. Edgerton died unexpectedly the following day.

Following Ms. Edgerton's death in July 2008, in anticipation of the national distribution, Defendants filed trademark applications for the trade names "K-Swift" and "Club Queen K-Swift." (Compl. ¶¶ 21, 22.)  In December 2008, Defendant Unruly Records released a joint recording with Koch Entertainment Distribution, entitled "The Club Queen: K-Swift Greatest Hits," which was a compilation of music that Ms. Edgerton and Defendants released from 2005 until her untimely death. (Compl. ¶ 31.)

Plaintiff's Amended Complaint essentially concerns the validity of two agreements between Unruly Records and Ms. Edgerton, which were executed in 2005: (1) the "Management Agreement" (hereinafter "Management Agreement"), and (2) the "Exclusive Mix CD and Compilation Agreement" (hereinafter "CD Agreement"). (Compl. ¶ 19.) Pursuant to the terms of the CD Agreement, Ms. Edgerton granted Unruly Records significant intellectual property rights to her albums, "including, but not limited to, copyright ownership of the 'CD Albums', the right to sell the CD Albums specifically to Downtown Locker Room and the right to use all of Ms. Edgerton's legal and professional names, trademarks, trade names and logos, Ms. Edgerton's likeness, identification and biographical material and the name and likeness of any person engaged by Ms. Edgerton to render services in connection with the CD Albums." (Compl. ¶ 27.)

Plaintiff alleges that these agreements are fraudulent, and that therefore Defendants have misappropriated Ms. Edgerton's intellectual property rights. Plaintiff's sole bass for its allegations of fraud are that (1) Plaintiff, the Estate of Khia Edgerton, has

- 4 -

never seen nor heard of these agreements, and (2) the signature pages are alleged perfect duplicates.  (Compl. ¶¶ 28, 29.)  Plaintiff further alleges that in the event that the Court finds the agreements to be valid, Defendants have breached the Management Agreement by failing to make an accounting or payments to Plaintiff from the release of "The Club Queen: K-Swift Greatest Hits."  (Compl. ¶ 34.)

Plaintiff has premised federal jurisdiction on alleged federal questions under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*; the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and 28 U.S.C. § 1338.  (Compl. ¶ 6.)  Plaintiff's alleged federal questions are found in Counts III, Violation of the Lanham Act and IV Copyright Infrigement, whereas the remaining Counts in Plaintiff's Amended Complaint are alleged proper through supplemental jurisdiction under 28 U.S.C. § 1367 and 28 U.S.C. § 1338.  Part I of this Memorandum's Argument addresses Count IV of Plaintiff's Complaint, which alleges a federal question under the U.S. Copyright Act.  Part II of this Memorandum's Argument addresses Count II of Plaintiff's Complaint, which alleges trademark infringement. While it is unclear whether this alleged claim is under state or federal law, it is Defendants' position that the claim fails to state a federal question.  Part III of this Memorandum's Argument addresses Count III of Plaintiff's Complaint, which alleges a federal question under the Lanham Act.

## PROCEDURAL HISTORY

On or about July 14, 2009, Plaintiff filed a Complaint against Defendants in the above-captioned case in the United States District Court for the District of Maryland

(Baltimore Division), and an Amended Complaint was filed on August 4, 2009.  On or about September 1, 2009, Defendants Mr. Caesar, Mr. Rice, and Mr. Gardner filed an Answer to Plaintiff's Amended Complaint, while Defendant Unruly Records filed a Motion for Extension of Time to Answer or Otherwise Respond to the Complaint (hereinafter "Motion for Extension of Time").  On September 10, 2009, the summons for UPI Holdings Inc. was returned unexecuted.  Thus as of this date, Defendant UPI has not been served.

## THE STANDARDS APPLICABLE TO THIS MOTION

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when the federal court lacks jurisdiction over the subject matter.  *Federal Rule of Procedure* 12(b)(1).  When subject matter jurisdiction is challenged, the district court is not confined to the Complaint and may refer to evidence outside of the pleadings, such as affidavits.  *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).  Ultimately, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Biktasheva v. Red Square Sports Inc.*, 336 F. Supp. 289, 294 (D. Md. 2005).

Likewise, the plaintiff bears the burden of establishing the sufficiency of the complaint when challenged, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides for the dismissal of a complaint when the plaintiff "can prove no set of facts which support his claim to relief."  *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *U.S. v. Jadhav*, 55 F.3d 337 (4th Cir. 2007).

A court contemplating a motion to dismiss for failure to state a claim must accept as true all well pled allegations and view them in the light most favorable to the plaintiff. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).   Courts construe pleading requirements liberally and a plaintiff is not required to plead every detail of his cause. *Conley*, 355 U.S. at 45.   However, plaintiffs must plead facts sufficient to provide "fair notice" of the "grounds" of the legal theory upon which relief is predicated. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007).

As such, to survive a 12(b)(6) motion to dismiss, Plaintiff's allegations must cover all of the elements that comprise the stated theory of relief. *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 220 (4th Cir. 1994).   Plaintiff must assert a factual basis to support its allegation that a violation has occurred. *Migdal v. Rowe Price –Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001).   "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Id.*   Thus, the Court may not consider conclusions of law or unwarranted deductions of fact. *Mylan Lab. Inc. v. Pharm. Basics, Inc.*, 808 F.Supp. 446, 449 (D. Md. 1992).

Based on the forgoing, a motion to dismiss is appropriate when the plaintiff has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009).

## ARGUMENT

I.    **PLAINTIFF'S ALLEGATIONS OF COPYRIGHT INFRINGMENT FAIL TO ALLEGE FACTS SUFFICENT TO CONFER FEDERAL JURISDICTION OR STATE A CLAIM FOR RELIEF**

### A.  Subject Matter Jurisdiction

28 U.S.C. § 1338 states, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . . [and] [s]uch jurisdiction shall be exclusive of the courts of the state."   While copyright infringement claims may originate in Federal District Court, to invoke federal jurisdiction, a plaintiff must plead facts sufficient to substantiate a case or controversy that arises under federal copyright law.   Indeed, a mere allegation of copyright infringement is not enough. *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 (4th. Cir. 1990).  "The mere fact that the complaint discloses that the case involves a copyright dispute . . . does not in itself lead to a conclusion that the case 'arises under' the Federal Copyright Act for the purposes of jurisdiction under 28 U.S.C. § 1338.  Many disputes over copyright ownership will arise under state law and involve no federal law questions."  *Id.*

The Fourth Circuit articulates the "definitive jurisdictional test" for copyright cases in *Young*, stating that "[a]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act."  895 F.2d at 970, citing, *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d. Cir. 1964).  Thus, while a properly pled claim for copyright infringement falls under the Act, "cases seeking primarily to vindicate state rights to ownership or royalties . . . framed as infringement actions . . . to obtain federal

jurisdiction," are to be dismissed, "[w]here there is a fatal flaw on the face of a complaint." *Id.* at 970 (quoting *Vestron v. Home Box Office*, 839 F.2d 1380, 1382 (9th Cir. 1988)).

In the case at bar, Plaintiff's Complaint is fatally flawed, as it fails to properly plead the elements of a federal copyright infringement claim.   To illustrate, in *Young*, the Fourth Circuit Court of Appeals found that the plaintiff's complaint properly pled copyright infringement, because the plaintiff "alleged alternative theories of copyright infringement under applicable sections of Title 17 of the United States Code . . . . made a proper allegation that it owned a copyright . . . . asked for damages pursuant to 17 U.S.C. § 504 . . . and a permanent injunction pursuant to 17 U.S.C. § 502." 895 F.2d at 971.

Here, Plaintiff's copyright infringement is articulated as follows: "Defendants are commercially selling CDs of Ms. Edgerton's sound recording without authorization." (Compl. ¶ 67).  Even if it is true, Plaintiff's naked declaration is wholly insufficient to invoke federal jurisdiction as Plaintiff fails to cite the applicable section of the Copyright Act, fails to properly allege ownership of a valid and protectable copyright, and fails to substantiate infringement. *See id.* at 969.

More importantly, Count IV of Plaintiff's Complaint pertains to alleged copyrights that are not registered with the U.S. Copyright Office.  As demonstrated below, the Copyright Act does not afford a remedy for the infringement of unregistered works, and Plaintiff's copyright claim therefore fails the *T.B. Harms* test of justicability. 339 F.2d 823.  As Plaintiff's copyright claim cannot be remedied under federal law, it

must be adjudicated under the laws of the State of Maryland, and Defendants' 12(b)(1)

motion to dismiss for lack of subject matter jurisdiction is appropriate as a matter of law.

### 1. Federal Copyright Registration is Required to Confer Standing for Copyright Infringement under the Copyright Act

Pursuant to 17 U.S.C. § 411(a), "no action for infringement of the copyright in

any United States work shall be instituted until preregistration or registration of the

copyright claim has been made in accordance with this title." The U.S. District Court for

the District of Maryland has interpreted § 411(a) to "require something more than

application for a copyright prior to filing suit." *Mays Assoc. Inc. v. Euler*, 370 F. Supp.

2d. 362, 368 (D. Md. 2005). The court drew a distinction between copyright application

and copyright registration, as contemplated by § 411(a):

> When read to give the words their ordinary, contemporary,
> and common meaning, [Section 411(a)] clearly evidences
> Congress' intent to require something more than
> application for a copyright prior to filing suit. . . . This
> section evidences Congress' intent for the United States
> Copyright Office to be able to apply its expertise to review
> applications to determine whether *registration* is warranted
> . . . The receipt of an actual certificate of registration or
> denial of same is a jurisdictional prerequisite as this Court
> should not exercise its jurisdiction prematurely and
> "prejudge" a determination to be made by the Copyright
> Office.

*Id*. at 368-69.

Since the plaintiff in *Mays* filed a copyright application on "the eve" of filing suit,

and had not actually received a registered copyright before bringing a copyright

infringement claim, the court granted the Defendants' Motion to Dismiss pursuant to

Rule 12(b)(1). *Id*. at 366. While Plaintiff here complains that Defendants have infringed

Ms. Edgerton's copyrights by selling her sound recordings, Plaintiff only filed

applications for registration of Ms. Edgerton's works on June 25, 2009 and July 9, 2009 (Compl. ¶¶ 67, 72; P. Exhibit 10.)   As in *Mays*, Plaintiff has filed an application to register its alleged copyrights on "the eve" of filing suit- this action being initiated on or about July 22, 2009.

The United States District Court for the District of Maryland has heretofore determined that a plaintiff's copyright application is insufficient to confer federal jurisdiction under the Copyright Act.  *See Smoot v. Simmons*, No. 05-3106, 2006 U.S. Dist. LEXIS 51561 (D. Md. 2006) (holding that D. Md. Court lacks subject matter jurisdiction for copyright infringement claim when plaintiff fails to allege federal registration of copyrights); *Blazer & Assoc. v. Union Bank and Trust,* 2009 U.S. Dist Lexis 49710 (granting defendant's 12(b)(1) motion where plaintiff failed to allege copyright was registered with Copyright Office); *see also Home & Nature Inc., v. Sherman Specialty Co.,* 322 F. Supp. 2d 260 (E.D.N.Y. 2004) (holding that infringement allegation satisfied liberal pleading requirements by listing copyright registration number, annexing copies of registration certificates, and identifying and correlating infringing work in complaint); *Scholz Design Inc., v. Zimmerman*, 2009 U.S. District LEXIS 62689 (granting plaintiff request for leave to file amended complaint to properly allege infringement claim).

Clearly, absent an actual receipt of a registered copyright for the works allegedly infringed, Plaintiff cannot establish ownership of a valid and protectable copyright and is therefore without standing to pursue an action for infringement under the Copyright Act, as this federal court is without power to remedy Plaintiff's alleged harm.

- 11 -

### 2. **Absent Its Claim for Infringement, Plaintiff's Remaining Copyright Claims are Governed by Maryland Common Law**

Having failed to properly plead a cause for infringement under the Copyright Act, ownership rights in the unregistered works of Ms. Edgerton become the linchpin of Plaintiff's copyright claim, as articulated in Count IV of the Complaint.  Yet, ownership of an unregistered copyright is governed by Maryland common law, not the Copyright Act.  *See Young v. City of Richmond*, 895 F.2d 967, 971 (4th Cir. 1990) (holding that many disputes over copyright ownership arise under state law and involve no federal law questions); *see also Vestron Inc. v. HBO Inc.*, 839 F.2d 1380 (9th Cir. 1988) (explaining that where suit is for a naked declaration of copyright ownership without bona fide infringement claim, federal courts decline jurisdiction).  For the purposes of federal question jurisdiction, a copyright claim without a proper allegation of infringement is fatally flawed.

When read together, counts I, IV, VI, VII, VIII, IX, and X of Plaintiff's Complaint illustrate a thinly veiled contract dispute regarding the ownership of the alleged copyrights to Ms. Edgerton's work.  Note that each of the aforementioned counts are state based claims, including Count IV for Copyright Infringement, as Plaintiff pleads relief for an unregistered work.  Clearly, Plaintiff's copyright claim is one that requires adjudication in state court.    As noted above, the Fourth Circuit squarely addressed Plaintiff's tactic in *Young v. City of Richmond*, acknowledging that "some cases seeking primarily to vindicate state rights to ownership or royalties will be framed as infringement actions in an effort to obtain federal jurisdiction."  895 F.2d at 970.  The

court concluded that dismissal of such cases is warranted when the allegation of infringement is deficient on its face. *Id.*

Plaintiff's attempts to circumvent state court jurisdiction regarding its alleged copyrights have already been tested in the Federal District Court of Maryland and in the Fourth Circuit, and such attempts have failed. Plaintiff's failure to properly plead copyright infringement is fatal to its assertion of federal jurisdiction. Based on the foregoing, Defendants' 12(b)(1) Motion to Dismiss as to Count IV should be granted.

### B. Failure to State a Claim Upon Which Relief Can be Granted

In Count IV of its Complaint, Plaintiff's copyright infringement claim also fails to state a claim for relief. Specifically, Plaintiff attempts to assert allegations of copyright infringement by declaring, "Defendants are commercially selling CDs of Ms. Edgerton's sound recording without authorization" and that "Defendants' exploitation of Ms. Edgerton's works is a blatant infringement of her valuable intellectual property rights." (Compl. ¶¶ 67, 70.) However, to substantiate a claim for copyright infringement, it is well established that Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original*." Feist Publ'n, Inc. v. Rural Tele. Serv. Co. Inc.,* 499 U.S. 340 (1991).

Count IV of Plaintiff's Complaint fails both elements of the established copyright infringement test, as Plaintiff has failed to plead facts sufficient to establish any valid and protectable copyrights in Ms. Edgerton's works, Plaintiff's ownership of said copyrights,

the originality of Ms. Edgerton's artistic works, and, most importantly, Defendants' copying of the original elements of Ms. Edgerton's work.

### 1.  **Plaintiff has Failed to Properly Plead Ownership of a Valid Copyright**.

Ownership of a valid copyright "is shown by (1) proof of originality and copyrightability and (2) compliance with the applicable statutory requirements." *Compaq Computer Co. v. Ergonome Inc.,* 387 F.3d 403, 408 (5th Cir. 2004) (cited favorably and followed in *Darden v. Peters*, 488 F.3d 277, 285-86 (4th Cir. 2007).

#### i.    *Ms Edgerton's work is not original.*

The Copyright Act affords copyright protection and exclusive rights in "original works of authorship," including "sound recordings."  17 U.S.C. § 102(a)(7).  Plaintiff claims that "Ms. Edgerton was the sole creator of her artistic works."  (Compl. ¶ 65.) Note that Plaintiff has not alleged that Ms. Edgerton is an author, composer, lyricist, or musician.  Thus, close scrutiny of Count IV of Plaintiff's Complaint begs the question: What exactly is Ms. Edgerton's artistic work?  More importantly, what portion of her work is original and therefore copyrightable?  This fact is of particular importance where, as Plaintiff alleges, Ms. Edgerton was merely a DJ, one who plays previously recorded music.  (Compl. ¶ 10.)[4]

The Fourth Circuit has explained that "[t]o be 'original,' the work in question must have been 'independently created by the author (as opposed to copied from other works).'"  *Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007).  Plaintiff's Exhibit 9

---

[4] Music which is authored, composed, produced and previously recorded by other musicians.  See Plaintiff's Exhibit 5.

demonstrates that rather than Ms. Edgerton being the "sole creator of her artistic works," there are in fact numerous artists involved in her works. "The Club Queen K-Swift Greatest Hits," for example, includes the music of artists such as Slice, Blaqstarr, and Rod Lee. (P. Exhibit 9.)

> ### ii.   *Plaintiff fails to provide notice of which alleged "copyrights" have been infringed by Defendants.*

Presumably, Plaintiff's alleged sound recordings are eligible for two possible copyrights, for (1) the music, lyrics, and composition and (2) the entire sound recording. 17 U.S.C. § 102(a)(2), (a)(7). Yet, Plaintiff's Complaint fails to allege valid protectable rights in either, and therefore provides inadequate notice of which, if any, copyright that Plaintiff claims Defendants infringed.

Having failed to plead facts sufficient to establish originality or copyrightability of Ms. Edgerton's work, plaintiff has failed to met the first prong of the test to establish ownership of a copyright as articulated by *Compaq Computer,* 387 F.3d 403, 408.

> ### iii.   *Plaintiff failed to comply with the statute.*

As noted above, Plaintiff has not established possession of a certificate of registration for the alleged copyright referenced in Count IV of the Complaint. As this court has determined that copyright registration is a prerequisite to a suit for copyright infringement, absent a certificate of registration, Plaintiff lacks standing to initiate a copyright claim. It follows that if Plaintiff is precluded from action, Plaintiff has indeed failed to articulate a claim for which relief can be granted. Dismissal of Count IV

pursuant to Federal Rule of Civil Procedure 12(b)(6) is therefore warranted as a matter of law.

### 2.   **Plaintiff Fails to Allege Facts Sufficient to Establish Copying of Original Elements of the Work**

For its copyright infringement claim, in addition to showing that Plaintiff owns a copyright in the works at issue, Plaintiff must show that Defendants **copied** "constituent elements of the work that are original." *Feist Publications*, 499 U.S. at 340.  Plaintiff cannot in good faith claim that Defendants have infringed on Ms. Edgerton's alleged copyrights without furnishing the court with Ms. Edgerton's original work of authorship and with a copy of the Defendants alleged infringing work, for comparison.  There is no possible way for this court to determine whether Ms. Edgerton's work was "**copied**" absent a comparison of the original work and the infringing work.

Defendants submit that Plaintiff's failure demonstrates there is **no original work of authorship**.  "The Club Queen: K-Swift Greatest Hits" is a compilation of previously released music covering the first five volumes of "The Jump Off," released in 2004 - 2005.  (P. Exhibit 9).  "The Jump Off" is a culmination of music composed, produced, and recorded by local artists.  Clearly, none of the music at issue originates with Ms. Edgerton.  Hence, Plaintiff is **unable** to provide this court with Ms. Edgerton's original work, which undoubtedly defeats Plaintiff's infringement claim.  Thus, Plaintiff has not pled facts sufficient to establish that Defendants copied Ms. Edgerton's work.

i.   ***Plaintiff must substantiate a time line to properly allege infringement.***

As noted above, Ms. Edgerton and Defendants released between sixteen (16) CDs together between 2005 and 2008.  While Plaintiff claims Defendants had no consent, license, or authorization to "exploit" Ms. Edgerton's work, Plaintiff concedes Ms. Edgerton "work[ed] with" Defendants, and that Defendants sold Ms. Edgerton's CDs from year 2005 until her death.  (Compl. ¶ 15.)

The question here is: When did Defendants actions become infringing ones? Even if this Court were to conclude that the contractual agreements between Ms. Edgerton and Defendants are void, Ms. Edgerton and Defendants released music together for about three years, without any discord.  Most importantly, Defendant Unruly Records' latest release, "The Club Queen K-Swift Greatest Hits," is a culmination of works previously released jointly by Ms. Edgerton and Defendants.  How can Plaintiff, in good faith, argue that Defendants have no right to disseminate music that they had already released prior to Ms. Edgerton's death?

Nevertheless, Plaintiff contends that at some point, there was a change in the status quo.  Defendants are entitled to fair notice of when their acts became infringing ones, and what factors are dispositive to Plaintiff's allegations.

Based on the foregoing, Plaintiff's copyright infringement claim is wholly insufficient in every way.  Having failed to plead with specificity Ms. Edgerton's original work of authorship and Plaintiff's ownership of the same, Plaintiff has failed to demonstrate it owns a valid and protectable copyright pursuant to 17 U.S.C § 501.

Indeed, even if this Court should find that Ms. Edgerton and/or Plaintiff has a copyright, there are no facts of record to establish infringement— that Ms. Edgerton's original work was copied by Defendants.

Plaintiff has failed to plead facts sufficient to establish its claim of copyright infringement.  As such, Defendants motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted as a matter of law.

## II.   PLAINTIFF'S ALLEGATIONS OF TRADEMARK INFRINGMENT FAIL TO ALLEGE FACTS SUFFICENT TO CONVEY FEDERAL JURISDICTION OR STATE A CLAIM FOR RELIEF

### A.   Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1338, "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks.  Similar to actions regarding  copyrights, the Federal Court exercises jurisdiction over trademarks concurrently with state courts."  *Taylor v. Anderson*, 234 U.S. 74 (1914).  In this case, while Count III of Plaintiff's Complaint purports to assert a claim for trademark infringement, Plaintiff has not alleged any violations of the Lanham Act, which governs federal trademark claims.

Clearly, as Plaintiff fails to plead with specificity Defendants' alleged violations of the Lanham Act, this court is without jurisdiction to adjudicate Plaintiff's claims.  To be sure, the Fourth Circuit states, "a factual attack on the jurisdictional allegations of a complaint is permissible so long as it does not involve the merits of an action."  *United States v. North Carolina*, 180 F.3. 574, 580 (4th Cir. 1999).  In this case, this court need

- 18 -

not look beyond the face of Plaintiff's Complaint, as Plaintiff has not articulated a case or controversy that arises under federal law.

Plaintiff fails to cite sections of the Lanham Act that pertain to Defendants' alleged infringement.  Further, Plaintiff fails to articulate any act by Defendants that constitutes a violation thereof.  Thus, as demonstrated in *U.S v. North Carolina*, Plaintiff's failure to plead violations of the Lanham Act is a facial defect, regardless of the validity of Plaintiff's underlying claim. As such, Defendants submit that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is warranted as a matter of law.

**B.      Failure to State a Claim Upon Which Relief Can be Granted**

Plaintiff's failure to cite with specificity any violation of the Lanham Act also necessitates dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants further submit that even if Count II of Plaintiff's Complaint can be read to articulate a request for relief under the Lanham Act, dismissal for failure to state a claim remains proper because the facts as alleged fail to state a claim for relief.

In order to maintain a cause of action for trademark infringement under the Lanham Act, Plaintiff must prove (1) that it has a valid and protectable mark, and (2) that Defendants use of the mark is likely to cause confusion.  *Lone Star Steakhouse & Saloon Inc.  v. Alpha of Virginia*, 43 F.3d 992, 920 (4th Cir. 1995).  The facts as pled in Count III of Plaintiff's Complaint have missed the mark on both elements.  As Plaintiff fails to

plead facts sufficient to establish federal protection of its alleged mark, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate.

### 1. **Plaintiff fails to substantiate a valid and protectable mark**

#### i.    *Lack of Registration.*

15 U.S.C. §1114(a) states that any person who shall, without the consent of the registrant,

> use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

The plain language of the statute indicates that a registered trademark is required to seek redress for trademark injuries under § 1114. Plaintiff clearly does not have a registered trademark. As Count III of Plaintiff's Complaint fails to articulate a cognizable theory of relief, for the purposes of federal question jurisdiction, Plaintiff lacks standing to pursue a cause for trademark infringement under § 1114 because Plaintiff fails to plead facts to establish it is a "registrant" as defined by the Act.

#### ii.    *Protectability of an unregistered mark.*

Section 43(a) of the Lanham Act protects unregistered marks, and creates a cause of action for infringement for anyone who suffers harm by the use, in commerce, of "any word, term, name, symbol, or device . . . which is likely to cause confusion." 15 U.S.C. § 1125(a). Yet, all unregistered trademarks and service marks are not entitled to protection under the Lanham Act. "Whether a mark is protected under federal law depends, first of all, on its classification - either as 'generic,' 'descriptive,' 'suggestive' or

'arbitrary/fanciful'. . . the degree of protection accorded to the mark hinges on the extent of its distinctiveness." *B & J Enterprises LTD.  v. Giordano*, 2009 U.S. App. Lexis 10564. (4th Cir. 2009).

Count II of Plaintiff's complaint utterly fails to allege **any** level of distinctiveness. In effect, Plaintiff fails to provide "fair notice" of the "grounds" of the legal theory upon which relief is predicated. *See Bell Atlantic,* 550 U.S. at 556.  As the level of federal protection is predicated on the level of distinctiveness as proven by Plaintiff, Plaintiff's failure in this regard is fatal to its claim for relief.

### 2.  Plaintiff Fails To Establish Infringement Under The Act

Defendants maintain that Plaintiff's trademark claims are entirely inarticulate. However, for the purposes of this Memorandum, at the onset of this particular discussion, there are a few important points worthy of consideration.  First, the right to copy creative works, with or without attribution, is the domain of copyright, not trademark or unfair competition.  Thus, the Lanham Act does not prevent the copying of an uncopyrighted work. *Dastar Corp. v. Twentieth Century Fox Film Corp*, 539 U.S. 23 (2003).

In Count II, Plaintiff complains, "Defendants, without authorization, have been disseminating CD recordings using Ms. Edgerton's trademark and performance names, 'K-Swift' and 'Queen Club K- Swift,' to commercially sell and advertise for the commercial sale of CDs." (Compl. ¶ 45.)  Yet, "unauthorized dissemination" falls squarely within the domain of copyright, not trademark. *Id*.  It is well-settled law that the right to, "distribute copies . . . of a copyrighted work to the public by sale" is an exclusive

- 21 -

right in a copyrighted work.  17 U.S.C §106(3).  *See generally Dastar*, 539 U.S. at 23.
As noted above, Plaintiff has failed to allege a valid copyright.

Moreover, Plaintiff states, without equivocation, that Ms. Edgerton is the sole
creator of her work, that the work alleged to be unlawfully disseminated is that of Ms.
Edgerton, and that Defendants used Ms. Edgerton's marks to advertise and sell the CDs.
Logically speaking, if Ms. Edgerton's mark is used to sell her work, there is **no** act of
infringement.  To illustrate, if Plaintiff claimed Defendants sold sound recordings that
originated with a person, other than Ms. Edgerton, and used Ms. Edgerton's mark to
consummate the sale, then Plaintiff's allegation of trademark infringement would be
palatable.

However, these are not the facts alleged by Plaintiff.  Indeed, according to
Plaintiff, Ms. Edgerton's mark was used to sell Ms. Edgerton's work.  When distilled to
its essence, Plaintiff's trademark claim, as alleged, begs the question: Do Defendants
have rights to sell Ms. Edgerton's work?  Plaintiff's trademark claim therefore poses an
issue governed by copyright law.

Having failed to allege facts sufficient to establish a valid and protectable
trademark and infringement thereof, Count II of Plaintiff's complaint fails to state a claim
upon which relief may be granted, and dismissal pursuant to Federal Rule of Civil
Procedure 12(b)(6) is warranted as a matter of law.

III.  **PLAINTIFF'S ALLEGATIONS UNDER THE LANHAM ACT FAIL TO ALLEGE FACTS SUFFICENT TO CONFER FEDERAL JURISDICTION OR STATE A CLAIM FOR RELIEF FOR FRAUD UNDER THE LANHAM ACT**

A.  **Subject Matter Jurisdiction**

1.  **Plaintiff's Allegation Of Fraud Does Not Cite The Lanham Act**

In Count III of its Complaint, Plaintiff alleges a federal question under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  While Plaintiff purports to assert that Defendants have committed fraud under the Lanham Act, Plaintiff fails to cite the section of the Lanham Act that Defendants are alleged to have violated.  As Plaintiff fails to plead with specificity Defendants' alleged violations of the Lanham Act, this court is without jurisdiction to adjudicate Plaintiff's claims, and dismissal pursuant to 12(b)(1) of the Federal Rules of Civil Procedure is warranted as a matter of law.

2.  **Plaintiff's Allegation Of Fraud Under The Lanham Act Is Without Merit, As Count III Of Plaintiff's Complaint Pertains To Unregistered Marks**

Without any specific reference to the Lanham Act, Plaintiff articulates Defendants alleged violations as the "use of and application to register Ms. Edgerton's performance names and artistic works," claiming this "submission of the trademark applications is a direct violation of the Lanham Act, a false designation of origin and overall, a blatant misappropriation of Ms. Edgerton's valuable intellectual property rights." (Compl. ¶¶ 52, 61.)  Plaintiff further elaborates that Mr. Caesar, "in his individual capacity, violated the Lanham Act and infringed on Ms. Edgerton's trademark by fraudulently filing two applications for 'K-Swift' and 'Club Queen K-Swift,' claiming ownership of the marks in relation to entertainment marketing services." (Compl. ¶ 53.)

- 23 -

Defendants maintain that Plaintiff's failure to cite with specificity the applicable section of the Lanham Act is fatal to its claim of fraud, as Plaintiff has failed to provide Defendants with sufficient notice of its cause of action. However, for the purposes of this motion, Defendants refute the merits of Plaintiff's Lanham Act claim under 15 U.S.C. § 1120.[5]

Pursuant to 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." In order for Plaintiff's claim to "arise under" the Lanham Act, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, Plaintiff must plead with specificity Defendants' alleged violations of the Lanham Act.

While § 1120 is presumably the Lanham Act section that Plaintiff intended to plead, Plaintiff's claim cannot fall under the clear language of this section. Section 1120 contemplates that Defendants already have a registered mark, and that Plaintiff is contesting the registration on grounds of fraud; this is evidenced through the language "[a]ny person who shall *procure registration*." 15 U.S.C. § 1120 (italics added).

While jurisdiction arising under § 1120 has not been addressed in detail by the Fourth Circuit, the Eighth Circuit stated that, "any person who procures registration of a trade-mark by a false declaration is liable in a civil action in the federal court to any

---

[5] Section 1120 is Defendant's best guess at Plaintiff's allegation of Fraud as Plaintiff's fails specificity in the Complaint what sections of the Lanham Act, if any, Defendants have violated.

- 24 -

person injured by the trade-mark 'for any damages sustained in consequence thereof,' that is, resulting from the use of the 'mark' while falsely registered, and not an injury resulting from the false declaration solely." *Landstrom et al. v. Thorpe et al.*, 189 F.2d 46, 50 (1951). Clearly, actual registration of a trademark is a prerequisite for suit under § 1120. As Plaintiff's claim is only for a false declaration, Plaintiff has failed to properly allege a violation of the Lanham Act, and therefore Count III should be dismissed pursuant to 12(b)(1) of the Federal Rules of Civil Procedure.

### 3. Plaintiff's Allegation of "Fraud" is Premised on the Validity of Two Contracts, Which are Governed by State Law

The gravaman of Plaintiff's entire case is the validity of the CD Agreement and the Management Agreement. The outcome of each and every federal claim, as asserted by Plaintiff, is premised on whether the Defendants had the right to exploit Ms. Edgerton's alleged intellectual property, pursuant to the CD Agreement executed in 2005.

Contractual disputes regarding the ownership of intellectual property are often cloaked as federal questions for want of federal jurisdiction. However, as noted above, where there is a fatal flaw on the face of the complaint regarding the alleged federal question, in this case – fraud pursuant to § 1120 – the suit should be dismissed for lack of subject matter jurisdiction. *See Vestron Inc.*, 839 F.2d. at 1382.

Clearly, as Plaintiff has failed to plead the fraudulent registration of a federal trademark, Plaintiff's allegation of fraud under the Lanham Act is fatally flawed. As a

result, Plaintiff's complaint of fraud is governed by state law, and dismissal pursuant to 12 (b)(1) is warranted as a matter of law.

### B.     Failure to State a Claim Upon Which Relief Can be Granted

As discussed above, Plaintiff claims in Count III of its Complaint that Defendants violated the Lanham Act by submitting two fraudulent trademark applications.  Plaintiff fails to allege what section of the Lanham Act its claim falls under, and as discussed above, Defendants will assume for the purposes of this argument that Plaintiff intended to plead a claim under 15 U.S.C. § 1120.  Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, Count III should be dismissed because Plaintiff fails to state a claim upon which relief can be granted.

### 1.   Plaintiff Fails to Plead Registration of the Mark

As noted above, Section 1120 states that "[a]ny person who shall *procure registration* in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof" (italics added).

Plaintiff's claim under § 1120 is for the trademarks "K-Swift" and "Club Queen K-Swift."  In this case, Plaintiff never pleads registration of these marks, and rather pleads only that Defendants have filed trademark applications for these marks.  (Compl. ¶¶ 21, 22, 52, 53, 57.)  Defendants have not procured registration for the trademarks at

issue, and therefore Plaintiff has not stated a claim for relief under § 1120. Since Plaintiff has failed to plead proper registration of the marks with USPTO, Plaintiff has failed to state a claim for which relief can be granted, and therefore dismissal of Count III is warranted as a matter of law.

### 2. **Plaintiff Fails to Plead Fraud with Specificity, as Required by Federal Rule of Civil Procedure 9(b)**

Plaintiff's Count III claim for fraud is subjected to a higher standard of scrutiny by Federal Rule of Civil Procedure 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q. 2d 1203 (T.T.A.B. 1997) (explaining that Rule 9(b) applies to claims of fraud in declarations to USPTO).

Under the Lanham Act, "[f]raud in procuring a service mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 340 (Fed. Cir. 1997). *See also Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46, 48 (Fed. Cir. 1986) (stating the prohibition against knowingly inaccurate or knowingly misleading statements includes statements made in the verified declaration forming a part of the application for registration). Thus, to substantiate a claim for fraud, Plaintiff "must show by clear and convincing evidence . . . that [Defendants] knowingly made a false, material representation of fact in connection with the . . . application. . . . Statements of honest, but perhaps incorrect, belief or innocently inaccurate statements of fact are insufficient as

knowing misstatements…" *Seidelmann Yachts, Inc. v. Pace Yacht Corp.,* 1989 U.S. Dist. LEXIS 17486, *30 (D. MD. 1989).

Plaintiff bears a heavy burden, as "the very nature of the charge of fraud requires it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and obviously, any doubt must be resolved against the charging party." *Smith Int'l Inc, V. Olin Corp.*, 209 USPQ 1033, 1004 (T.T.A.B. 1981).

In this case, Plaintiff's fraud claim is summarized as follows: Mr. Caesar "knowingly and willingly made a false statement to the USPTO . . . that he and his agent were properly authorized to execute the federal trademark application and that he is the owner of the marks sought to be registered." (Compl. ¶ 54.) Mr. Caesar "is aware, or should be aware, that he has no rights in the performance names of Ms. Edgerton." (Compl. ¶ 55.) Mr. Caesar "is aware of Ms. Edgerton's rightful claim to the marks and should know that he has no individual claim to Ms. Edgerton's intellectual property or the exploitation thereof." (Compl. ¶ 60.)

Plaintiff's averments, when distilled to their essence, are threadbare recitals of the elements of fraud. Plaintiff offers **no factual basis** for its claim. Accordingly, dismissal pursuant to Federal Rule of Civil Procedure 9(b) is warranted as a matter of law.

### i.      *Negligence, as alleged by Plaintiff, is not the requisite culpability to substantiate fraud under the Lanham Act.*

The allegation that Mr. Caesar was "aware" or "should have been aware" is not enough to satisfy the pleading requirements for a claim of fraud. Since "[f]raud in

procuring a service mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application," *Metro Traffic Control*, 104 F.3d 336, 340 (Fed. Cir. 1997), in stating that Mr. Caesar "should have been aware," Plaintiff impermissibly lowers the standard for fraud to one of simple negligence. *Ileto v. Glock Inc.* 565 F.3d 1126, 1155 (9th. Cir. 2009). "Mere negligence is not sufficient to infer fraud or dishonesty." *Symbol Techs Inc. v. Opticon Inc.*, 935 F. 2d 1569, 1582 (Fed. Cir. 1991).

> ### ii.    Plaintiff has not pled facts sufficient to establish Defendants acted   "knowingly," as required by the Lanham Act.

Plaintiff also fails to meet its burden of pleading that Defendants "knowingly" made false statements, because of the CD Agreement executed between Defendants and Ms. Edgerton, and because of Defendants long-standing amicable business relationship with Ms. Edgerton.  In light of the fact that "[s]tatements of honest, but perhaps incorrect, belief or innocently inaccurate statements of fact are insufficient as knowing misstatements," *Seidelmann Yachts, Inc.,* 1989 U.S. Dist. LEXIS 17486, *30 (D. MD. 1989), Plaintiff fails to articulate facts to substantiate fraud.

To illustrate, even if this Court were to find that Defendants are not the rightful owners of the two trademarks at issue, the CD Agreement between Unruly Records and Ms. Edgerton clearly purports to grant Unruly Records the right to use Ms. Edgerton's "legal and professional names, trademarks, trade names and logos." (Compl. ¶ 27.)   As such, the validity of the agreement is irrelevant to Plaintiff's claim of fraud, as any doubt regarding Mr. Caesar's **state of mind or belief** that he was the rightful owner of the

- 29 -

trademarks at issue, must be resolved **against Plaintiff**. *See Smith,* 209 USPQ at 1004. To be clear, Plaintiff's acknowledgement of the CD Agreement defeats its claim for fraud, despite its alleged illegality, because Plaintiff has not established that Mr. Caesar's **beliefs** regarding his rights to the marks were **not honest**—even if mistaken.

### iii.    *Plaintiff fails to allege Defendants committed a fraudulent act under the Lanham Act.*

Assuming *arguendo*, that the CD Agreement is relevant to this Court's analysis of any of the issues as raised by the Plaintiff, note that Plaintiff never alleges the signature on the CD Agreement between Ms. Edgerton and Defendants **is not** that of Ms. Edgerton. Plaintiff states, "Plaintiff has never seen nor heard of either the alleged Management Agreement or the alleged CD Agreement before these documents were forwarded by Paul W. Gardner." (Compl. ¶ 28.)  Yet, Plaintiff, "the Estate of Khia Edgerton," was not in existence in 2005 when Ms. Edgerton signed either agreement, as the Letters of Administration were executed on October 24, 2008.  Thus, the fact that Plaintiff, "the Estate of Khia Edgerton," has never seen nor heard of the agreements, is not probative on the issue of whether Ms. Edgerton and Defendants executed the document three years prior.

Plaintiff further states, "Most tellingly, the signature pages provided by Paul W. Gardner for both the alleged Management Agreement and the alleged CD Agreement are perfect duplicates, and, therefore, appear to be fraudulent." (Compl. ¶ 29.)  Even if true, there is no allegation that the signature on one or either of the documents is not that of

Ms. Edgerton.  Plaintiff cannot allege fraud without substantiating that the signature on either document does not belong to Ms. Edgerton.

Lastly, Plaintiff claims, "Upon information and belief, Defendants committed fraud by uttering the counterfeit Management Agreement and forging Ms. Edgerton's name . . ."  (Compl. ¶ 37.)  However, Defendants submit that the averment "upon information and belief" is insufficient to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Proctor v. Metropolitan Money Store Corp.*, 579 F.Supp.2d 724, 744 (D. Md. 2008) (dismissing fraud claim made "upon information and belief" as vague, speculative, ultimately conclusory, and making no specific factual allegations).  Thus, to properly plead fraud, Plaintiff must provide a sufficient factual basis for that which is asserted, "upon information and belief."  Here, Plaintiff has completely missed the mark, as Plaintiff has failed to allege that the signature on one or either document is not Ms. Edgerton's signature.

Considering the above analysis, regarding § 1120, Plaintiff's most egregious failure in regarding its claim for fraud is that Plaintiff fails to plead with specificity how Defendants used, or the USPTO relied detrimentally, on the alleged counterfeit or forged agreements to obtain and/or grant the trademark registration.    Indeed, there is no trademark registration at issue.  As a consequence, Plaintiff's claims regarding the alleged counterfeit CD Agreement and Management Agreement are irrelevant to this court's analysis of § 1120.  The law requires Plaintiff to assert a factual basis to support its claim of fraud.  As this Court may not consider conclusions of law or unwarranted

deductions of fact, *Mylan,* 808 F.Supp. at 449, dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) is warranted as a matter of law.

### 3. **Plaintiff Fails To Allege Any Facts That Demonstrate Fraud On The Part Of Defendant Mr. Gardner**

It is entirely unclear why Attorney Paul W. Gardner is named as a Defendant. Plaintiff's entire Complaint is devoid of any allegation, of wrongdoing, malfeasance, a fiduciary relationship, breach thereof or anything of the like. As with every allegation in Plaintiff's Complaint, Plaintiff fails to articulate a palpable cause of action or theory of relief against Mr. Gardner. In fact, based on the facts and circumstances as alleged by Plaintiff, there **is no** cause of action that **can be** asserted against Mr. Gardner.

As Plaintiff fails to articulate subject matter of its claim against Mr. Gardner, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is warranted as a matter of law. Plaintiff's failure to state a claim against Mr. Gardner necessitates dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, above and below, Defendant Mr. Gardner respectfully requests that Plaintiff's claims be dismissed with prejudice.

### CONCLUSION

The CD insert to "The Club Queen: K-Swift Greatest Hits" has a thank you from Ms. Edgerton to Mr. Caesar, wherein she states, "Shawn Caesar (Pops) thank you for 'grinding' non-stop, believing in me and my dream. I am forever grateful to you! I Love You!"

- 32 -

Ms. Edgerton and Defendants were friends for over fifteen (15) years. Ms. Edgerton produced sixteen (16) albums with the Defendants over the course of a three (3) year business relationship. There was never any discussion of trademark or copyright infringement, breach of contract, fraud or anything of the like, prior to the formation of Ms. Edgerton's estate. The filing of this suit is unfortunate, as Ms. Edgerton's dream was to introduce Baltimore club music to the mainstream, as accomplished by Defendants.

The pretense of Plaintiff's Complaint is obvious. First, Plaintiff's Complaint is a thinly veiled contractual dispute asserted under the guise of a federal question for the sole purpose of obtaining federal jurisdiction. Clearly federal jurisdiction is desirable, as a favorable ruling on a properly plead complaint could result in treble damages, attorneys fees and costs, and a myriad of damages that are not available to Plaintiff under state and common law. Thus, all 10 counts of the Complaint affirm Plaintiff's one (1) true aspiration in filing suit against Defendants – **MONEY.** This case is about money plain and simple. Yet, Plaintiff has been advised repeatedly that there is no money. Prior to filing suit, Plaintiff was informed that Defendants had not recouped the expense of the release of "The Club Queen: K-Swift Greatest Hits." Therefore Defendants have not realized any profit as of this date. There is no **MONEY** for Plaintiff to recover.

Based on the foregoing, as a matter of law, this suit is futile, because Counts III and IV fail to assert a federal question and the remaining counts as alleged by Plaintiff's Complaint are not proper through supplemental jurisdiction under 28 U.S.C. § 1367 or 28 U.S.C. § 1338. As a practical matter, this suit is futile, as Plaintiff seeks remuneration for profits, gains, and/or earnings that the Defendants have not realized.

Most importantly, Plaintiff's cause of action is a complete sham, as evidenced by the fact that the Complaint is completely inarticulate; it fails to provide adequate notice of Plaintiff's federal claims;  it does not state one (1) statutory provision violated by any Defendant; it fails to distinguish between the offending acts of the Defendants as alleged; and it does not outline any cognizable theory of relief.   The burden of deciphering Plaintiff's Complaint is arduous, but more importantly, Plaintiff's lack of due diligence in asserting this causes of action is inequitable to each Defendant.

Dismissal, with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), is warranted as a matter of law, justice and fundamental fairness.  As noted above, "conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001).  Clearly, this Plaintiff is fishing, and the law requires this expedition be put to an end.

Respectfully submitted,

Paul W. Gardner, II Esq.,
10 N. Calvert Street,
Suite 735
Baltimore, MD. 21202
Defendant, *Pro Se*

- 34 -