# **TABLE OF CONTENTS**

Table of Authorities ………………………………………………………………………………iii

**I. INTRODUCTION** ......................................................................................................................... 1

   **A.   Background Facts** .............................................................................................................. 3

   **B.   Applicable Legal Standards** ............................................................................................ 7

      1.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ................... 7

      2.   Rule 12(b)(6) Motion to Dismiss Conversion to Rule 12(c) Judgment on the Pleadings .......................... 7

      3.   Rule 12(c) Judgment on the Pleadings .......................................................................... 8

**II.   THE COMPLAINT SUFFICIENTLY ALLEGES FACTS OF TRADEMARK INFRINGEMENT TO CONVEY FEDERAL JURISDICTION UNDER THE LANHAM ACT** ...................................................... 9

   **A.   Subject Matter Jurisdiction** ............................................................................................ 9

      1.   The Complaint Does Not Fail for Omitting the Citation for the Statute Violated in the Lanham Act ...... 9

      2.   This Court has Subject Matter Jurisdiction Over this Action Irrespective of the Validity of the CD Agreement ........................ 10

   **B.   The Complaint States a Claim for Trademark Infringement Upon Which Relief may be Granted Under the Lanham Act** ........................ 11

      1.   The Complaint Adequately Alleges the Validity and Protectablity of the Trademarks ........................... 12

         a.   *The Complaint Sufficiently Alleges Defendant's Use of Plaintiff's Mark in Interstate Commerce* ..... 12
         b.   *The Complaint Sufficiently Alleged the Trademark was Distinctive* .................................................... 13

      2.   The Complaint Adequately Alleges Defendant's Use of the Mark is Likely to Cause Confusion Among Consumers ........................ 14

      3.   Conclusion- The Complaint Establishes a Cognizable Trademark Infringement Claim Under Federal Law ........................ 16

**III.   THE COMPLAINT STATES CLAIMS FOR RELIEF WHICH RELIEF MAY BE GRANTED UNDER THE LANHAM ACT SECTION 43(A)** ........................................................ 17

   **A.   The Complaint Alleged Violation of Section 43(a) -  False Endorsement by Defendants' Use of Ms. Edgerton's Trademark** ........................ 17

      1.   False Designation of Origin ......................................................................................... 18

      2.   Plaintiff's Damage ....................................................................................................... 18

   **B.   The Complaint Alleged Violation of Section 43(a)- False Advertisement by Defendants' Use of Ms. Edgerton's Trademark** ........................ 19

      1.   Materially False or Misleading Representation of Fact ............................................... 19

      2.   Defendants' Representations Were Made in Connection with the Commercial Advertising of Defendants' Product ........................ 20

**IV.  THE COMPLAINT PLEADS FRAUD- VIOLATION OF THE LANHAM ACT SECTION 43(A) WITH SPECIFICITY AS REQUIRED BY FED. R. CIV. P. 9(B)** .......................................................... 20

  **A.  Legal Standard of Review** .................................................................................. 20

  **B.  Plaintiff's Allegations of Fraud Adhere to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b)** ....................................................................................................... 21

    1.  The Complaint Adequately Pleads the Time, Place and Contents of the False Representations ............ 22

    2.  The Complaint Adequately Pleads the Identity of the Persons Making the Misrepresentations ............ 22

    3.  The Complaint Adequately Pleads What Defendants Obtained as a Result of the Misrepresentations... 23

    4.  The Complaint Adequately Pleads Facts Demonstrating Fraud by Mr. Gardner .................................. 23

    5.  Conclusion- The Complaint Adheres and Exceeds the Heightened Rule 9(b) Requirements. ............... 24

**V.  THE COMPLAINT SUFFICIENTLY ALLEGES COPYRIGHT INFRINGEMENT TO CONVEY FEDERAL JURISDICTION** ................................................................................................ 24

  **A.  Subject Matter Jurisdiction** .............................................................................. 24

    1.  The Complaint Alleges Facts Sufficient to Meet the Jurisdictional Prerequisites Imposed by the Fourth Circuit in Federal Copyright Infringement Claims................................................................................. 25

      a.  *The Complaint Alleges Ms. Edgerton's Ownership of a Copyright, Defendants' Infringing Acts and Requests Damages Pursuant to the Copyright Act* .......................................................... 26

    2.  Plaintiff has Proper Standing for Copyright Infringement under the Copyright Act ............................. 26

    3.  This Court has Subject Matter Jurisdiction over this Action Irrespective of the Copyright Infringement Claim ................................................................................................................................ 27

  **B.  The Complaint States a Claim for Copyright Infringement Upon Which Relief may be Granted under Federal Law** .................................................................................................. 28

    1.  Plaintiff Properly Pled Ownership of a Valid, Protectable Copyright.................................................. 29

      a.  *The Complaint Sufficiently Alleges Ms. Edgerton's Works are Original* ........................................ 29
      b.  *The Complaint Sufficiently Alleges* Compli*ance with the Statutory Requirements* ............................ 30

    2.  The Complaint Alleged Facts Sufficient to Establish Defendant's Copying of Original Elements of Ms. Edgerton's Work ......................................................................................................................... 30

    3.  Conclusion- The Complaint States a Valid Claim for Copyright Infringement Under Federal Law...... 31

  **C.  The Complaint Provides Notice of When Defendants' Acts Began Infringing Upon Ms. Edgerton's Work** ................................................................................................................ 32

**VI. CONCLUSION** ....................................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) ........................................................... 9

*Albert v. Carovano*, 851 F. 2d. 561 (2d. Cir. 1988) .............................................................. 12

*Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387-87 (5th Cir. 1984) ......................... 28

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992) ................................. 12

*Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008) ............... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 11

*Biktasheva v. Red Square Sports*, 366 F. Supp. 2d 289, 294 (D. Md. 2005) ......................... 9

*Black & Decker, Inc. v. Pro-tech Power, Inc.*, 26 F. Supp. 2d 834, 863 (E.D. Va.1998) ....... 20

*Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401 (4th Cir.2002) ............... 10

*Business Information Systems v. Professional Governmental Research & Solutions, Inc.*, 2003 WL
    23960534 (W.D. Va. 2003) ............................................................................................. 20

*C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F. 3d 430 (4th Cir.1997) ........ 21

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F. 3d 302 (1st Cir. 2002) ........... 21

*Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir.1996) ................................. 10

*Collegenet, Inc. v. XAP Corp.*, 2004 WL 2303506 (D. Or.) ................................................. 23

*Commins v. Discovery Commc'ns*, 200 F. Supp. 2d 512 (D. Md. 2002) ............................. 19

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................... 11

*Conley v. Green*, 355 U.S. 41 (1957) ............................................................................. 12, 24

*Darden v. Peters*, 488 F.3d 277, 285-86 (4th Cir. 2007) ..................................................... 30

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) ...................................... 10

*Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir.1994) ............... 10

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of NY*, 375 F. 3d. 168 (2d. Cir. 2004) ... 23

*Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) .............................................. 9

*Fare Deals, Ltd. v. Glorioso*, 217 F.Supp.2d 670, 671 (D.Md.2002) ................................... 10

*Feist Publ'n, Inc. v. Rural Tele. Serv. Co. Inc.*, 499 U.S. 340 (1991) ................................. 30

*Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997) ...................................... 10

*Fox Chem. Co. v. Amsoil, Inc.*, 445 F.Supp. 1355, 1357 (D.Minn. 1978) ........................... 23

*Holland v. Psychological Assessment Resources, Inc.*, 482 F. Supp. 2d 667 (D.Md. 2007) .................... 19

*Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962 (7th Cir. 1992) ............................. 12

*IV E AFL-CIO Pension Fund v. Herrman*, 9 F. 3d 1049 (2d. Cir. 1993) ............................. 22

*Larsen v. Terk Technologies Corp.*, 151 F. 3d 140 (4th Cir. 1998) ...................................... 14

*Larsen v. Terk Technologies Corp.*, 151 F. 3d 140, 146 (4th Cir. 1996) ............................. 15

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F. 3d. 922 (4th Cir. 1995). ...................... 13

*Mays Assoc. Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md. 2005) ............................................. 9

*MicroStrategy, Inc. v. Motorola*, 245 F. 3d 335 (4th Cir. 2001) ......................................... 15

*Mills v. Polar Molecular Corp.*, 12. F. 3d 1170, 1174 (1993) ............................................... 22

*Northrop v. Hoffman*, 134 F. 3d. 41 (1997) ......................................................................... 12

*Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994) ....................................... 28

*Perini Corp. v. Perini Constr. Inc.*, 915 F. 2d 121 (4th Cir. 1990) ................................. 13, 15

*Perini Corporation v. Perini Construction, Inc.*, 915 F.2d 121 (4th Cir. 1990) ................... 17

*Phoenix Renovation Corp. v. Rodriguez*, 2007 WL 4443328 (4th Cir. 2007)........................................ 28
*Pizzeria Uno Corp.* v. *Temple*, 747 F.2d 1522 (4th Cir. 1984) ............................................................ 15
*Polo Fashions, Inc.* v. *Craftex. Inc*., 816 F.2d 145 (4th Cir. 1987). ................................................... 17
*Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d 765 at 768 (4th Cir. 1990).......................... 9
*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 552 (1987) ............... 16
*Sanderson v. Brugman*, 2001 WL 69986 (S.D. Ind. 2001)................................................................... 23
*Sara Lee Corp v. Kayser-Roth Corp.*, 81 F. 3d 455 (4th Cir. 1996)..................................................... 15
*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F. 3d 455, 464 (4th Cir. 1996)............................................. 14
*Scotts Co. v. United Industries Corp.*, 315 F. 3d 264 (4th Cir. 2002) ................................................. 21
*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 174 F.Supp.2d 388, 391 (D.Md.2001) ...................... 9
*Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp 2d 652, 662 (E.D. Va. 2002).............................................................................................................................................. 23
*Synergistic Intern., LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006).............................................. 13, 15
*Tellabs, Inc. v. Maker Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..................................................... 11
*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)................................................................ 15
*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997)....................................................... 32
*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370 (4th Cir. 2008)................................ 23
*U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517 (4th Cir. 2002)........................................ 13, 14
*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir.1992).................................................................... 19
*Young v. City of Richmond*, 895 F.2d 967 (4th Cir. 1990) ................................................................. 26

**Statutes**
15 U.S.C. § 1157 ……………………………………………………………………………………  11
15 U.S.C. § 1127.............................................................................................................................. 14
17 U.S.C. § 101................................................................................................................................ 26
17 U.S.C. § 411(a) ........................................................................................................................... 28
17 U.S.C. § 502................................................................................................................................ 27
28 U.S.C. § 1331......................................................................................................................... 11, 26
28 U.S.C. § 1338.............................................................................................................................. 26
Federal Rule of Civil Procedure 9(b)................................................................................................ 23
15 U.S.C. § 1125(a) ......................................................................................................................... 11

**Rules**
Fed. R. Civ. P. 12(b) ....................................................................................................................... 10
Fed. R. Civ. P. 12(b)(1)..................................................................................................................... 9
Fed. R. Civ. P. 8(a) ..................................................................................................................... 12, 24
Fed. R. Civ. P. 9(b) ........................................................................................................................... 3
Fed.R.Civ.P.12(h)(2)....................................................................................................................... 10

**Treatises**
2 NIMMER ON COPYRIGHT § 7.16[B][1] (1999).......................................................................... 28
5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 514-15 (2d ed.1990)........................................................................................................................................ 10

# I. INTRODUCTION

Plaintiff, The Estate of Khia Edgerton ("Plaintiff"), as administered by Juanita Davis-Edgerton and Joseph Daniel Edgerton, Jr., by and through its undersigned attorney, files this response in opposition to Defendant Paul Gardner's Motion for Judgment on the Pleadings and respectfully requests this Court deny the motion in its entirety.

Defendant Paul Gardner, II, Esq.  filed a motion to dismiss on the grounds the Plaintiff's Amended Complaint did not: 1) allege trademark infringement sufficient to convey federal subject matter jurisdiction or a claim for relief; 2) state claims for relief for fraud which may be granted under the Lanham Act Section 43(a) sufficient to confer federal subject matter jurisdiction; 3) comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) in its allegations of fraud under the Lanham Act Section 43(a); or 4) allege copyright infringement sufficient to confer federal jurisdiction or a claim for relief.  As Defendant's motion to dismiss was filed after his answer to Plaintiff's Amended Complaint was filed, in accordance with motions practice in this Circuit, the Defendant's motion should be treated as a 12(c) motion for judgment on the pleadings.

Each of the arguments raised by the Defendant is without merit.  First, the Defendant argues this Court does not have subject matter jurisdiction over the trademark infringement claim because the trademark at the basis for the infringement claim is not registered.   Unlike other provisions in the Lanham Act, Section 43(a), the section in which Plaintiff bases its trademark claims, protects against infringement even though the trademark has not been federally registered.  To prevail on claims of trademark infringement under federal law, a plaintiff is obligated to show the court that it had a valid, protectable trademark and that the defendant's use the trademark is likely to cause confusion among consumers.  Here, Plaintiff alleged its mark is valid, protectable because it was both used in interstate

commerce and distinctive.   Likewise, the Plaintiff has alleged the defendant's use is likely to cause confusion among consumers.   Even though court has established a list of factors to determine whether a mark is likely to cause confusion, the court has also said when marks are substantially identical there is prima facie evidence of infringement.   The complaint alleges the defendants released a product into interstate commerce using the exact same mark owned and previously used by the Plaintiff.   By pleading the Plaintiff's mark is valid, protectable, used in interstate commerce and defendants' use of the mark is likely to cause confusion in the marketplace, the complaint establishes a cognizable trademark infringement claim under federal law.

Second, Defendant Gardner's claim that the  Complaint is deficient because trademark not registered is without merit.   Section 43(a) of the Lanham Act establishes two basis of liability: (1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device (otherwise known as "false association" or "false endorsement") and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"), neither of which requires the trademark to be registered in order for a claim to be initiated or sustained.   The complaint alleges violations by the defendants for both false advertising and false endorsement.   As to false association, the complaint alleges the defendants' use of Plaintiff's trademark in connection with their goods used in interstate commerce and that the defendants' use of the mark is likely to cause confusion as to Plaintiff's sponsorship or approval of defendants' product.   As to false advertising, the complaint alleges the defendants' materially false and misleading representation of fact in connection with the commercial advertising and production of their product which was used in interstate commerce which is likely to confuse consumers into believing Plaintiff is associated with the product, representations which have caused damaged to the Plaintiff.

Third, in the Defendant argues the Plaintiff's Complaint did not adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) when it pled fraud against the defendants. In fact, the Plaintiff's Complaint complied with the heightened standards by: 1) the time, place and contents of the false representations; 2) the identity of the person making the misrepresentation; and 3) what they obtained thereby.

Contrary to Defendant's assertions, this court has subject matter jurisdiction over Plaintiff's copyright infringement claim and the Plaintiff adequately pled ownership of a valid copyright and the defendants' copying of original works.  The Complaint more than adequately alleges Plaintiff complied with the statutory requirements regarding registration of the copyright, giving this Court the authority to hear the Plaintiff's claim.  The Complaint provides proof of originality of the works and compliance with the statute regarding copyright registration.   By alleging the works defendants are selling are the exact works which belong to the Plaintiff, the Complaint more than adequately provides facts regarding the copying of Plaintiff's works.

Accordingly, for the reasons set out below, Plaintiff, respectfully requests the Court to deny Defendant Paul Gardner's Motion for Judgment on the Pleadings.

### A.  Background Facts

Ms. Khia Edgerton ("Ms. Edgerton") was a well-known disc jockey ("DJ") in the Baltimore, Maryland area.  Compl. ¶ 10.  Since 1993, Ms. Edgerton performed under the names "K-Swift" and "Club Queen K-Swift."  Compl. ¶ 41.  Ms. Edgerton used the names in advertisements for performances, concerts and on her sound recordings to identify her DJ services, her musical creations and other artistic work. Compl. ¶ 42.   As Ms. Edgerton used the names in various facets of her public persona since she was fifteen years old, the names have appeared in close association with a clear reference to entertainment

services of Ms. Edgerton, and thus, attained service and trademark status exclusively owned by Ms.

Edgerton.  Compl. ¶ 43.

Throughout her career, Ms. Edgerton released more than fourteen (14) sound recordings on

compact discs ("CDs") also under the performance names "K-Swift" and "Club Queen K-Swift".

Compl. ¶ 12.  Ms. Edgerton gained notoriety for creating and introducing consumers to a new music

style she developed.  Def.'s Mem. Supp. Mot. J. 2.  Ms. Edgerton was a successful DJ and became fairly

well-known by selling her CDs with her new creation in not only the Baltimore area, but the District of

Columbia, Virginia and other regions of the United States and beyond.  Compl. ¶ 11.  In 2005, Scott

Rice and Shawn Caesar, partners in Unruly Productions, Inc., approached Ms. Edgerton, soliciting their

CD distribution and management services.  Compl. ¶¶ 13, 15.  As a result of the partnership with

Unruly, Unruly Productions has been selling Ms. Edgerton's recordings since 2005.  Compl. ¶ 15.

In December 2007, Ms. Edgerton formed a limited liability company named Club Queen

Entertainment, LLC.  Compl. ¶ 16.  Club Queen Entertainment, LLC provided graphic services, graphic

and music production and management services, many of the same services Unruly Productions offers.

Compl. ¶ 16.

On Though the details are not consistent or clear , it appears that on July 21, 2008, during a

party, Ms. Edgerton fractured her neck and died at her home, in what was deemed a diving accident.

Compl. ¶ 17.  Within days of her death, the <u>Midnight Sun</u>, a publication of the <u>Baltimore Sun</u>, published

an article announcing Unruly Records signed a significant distribution deal with the largest independent

label in the United States, Koch Entertainment Distribution.  Compl. ¶ 30.  As a result of the deal,

Unruly Records' products would be sold throughout the United States, to major retail vendors, various

internet outlets and across the world. Compl. ¶ 31, 33.  In the article, Shawn Caesar announced the first

4

CD that would be released under the distribution deal would be a compilation of Ms. Edgerton's recordings called "The Club Queen: K-Swift's Greatest Hits."  Compl. ¶ 30,31.  The article indicated Unruly Records signed the deal with Koch one day after Ms. Edgerton died.  Compl. ¶ 30.

On July 28, 2008, seven days after Ms. Edgerton's death, a federal trademark application Serial No. 77/533520 for "K-Swift" was filed with the United States Patent and Trademark Office (the "USPTO"), which identifies Shawn Caesar as the applicant and Paul W. Gardner II, Esq. as the attorney of Record. Compl. ¶ 21.  The next day, July 29, 2008, another federal trademark application Serial No. 77/533478 was filed for "Club Queen K-Swift" with the USPTO, which identifies Shawn Caesar as the applicant and Paul W. Gardner II, Esq. as the attorney of record.  Compl. ¶ 21.

Upon Ms. Edgerton's death, the parents of Ms. Edgerton, Juanita Davis-Edgerton and Joseph Daniel Edgerton, Jr., contacted Shawn Caesar to obtain information regarding Ms. Edgerton's and Unruly Productions' business arrangements.  Compl. ¶ 18.  During their discussion, Mr. Caesar and Mr. Rice alleged that there were two agreements between Unruly Productions and Ms. Edgerton, a Management Agreement and an "Exclusive Mix CD and Compilation Agreement" ("CD Agreement").  Compl. ¶ 19. When the Edgertons asked to see the agreement, Mr. Caesar and Mr. Rice indicated they would provide the documents to them.  Compl. ¶ 19, 23.  After inquiring multiple times for approximately a month and a half to obtain copies of the two agreements, Paul Gardner, purporting to be the attorney for Unruly Records forwarded the agreements to the Roberts Law Group.  Compl. ¶ 23.  Pursuant to the Management Agreement presented by Paul W. Gardner, II, Esq. on the behalf of Unruly Productions, Unruly Records, Scott Rice and Shawn Caesar were to collect weekly compensation of fifteen percent (15%) for the DJ services Ms. Edgerton performed, whether on the radio, in nightclubs or other events.  Compl. ¶ 25.  The CD Agreement also presented by Paul W. Gardner, II, Esq. on the behalf of Unruly Productions, purports to

5

grant significant property rights to Unruly Productions, including, but not limited to copyright ownership of all of Ms. Edgerton's CDs, the right to sell the CDs specifically in Downtown Locker Room locations and the right to use all of Ms. Edgerton's legal and professional names, trademarks, trade names and logos, Ms. Edgerton's likeness, identification and biographical material and the name and likeness of any persons engaged by Ms. Edgerton to render services in connection with the CDs.  Compl. ¶ 27.  As the signature page of the CD Agreement is identical to the signature page of the signed Management Agreement, at best, Plaintiff believes the CD Agreement presented by the Defendants is fraudulent.  Compl. ¶ 29.

In December 2008, Unruly Records, in fact, released "The Club Queen: K-Swift's Greatest Hits" not only in Baltimore, but through numerous national retail vendor chains and various internet outlets. Compl. ¶ 31.  "The Club Queen: K-Swift's Greatest Hits" CD and many of Ms. Edgerton's CDs are still being sold by a number of vendors, including multiple Downtown Locker Room locations, CD Universe, CD Baby, Best Buy, Tower Records, Music Stack, Best J&R.com, Sam Goody, Cheap CDs, Mark Tatum, Red Rum Media, VH1 Shop, and several other entities throughout the United States and a number of other countries.  Compl. ¶ 33.  Despite the use of Ms. Edgerton's trademark, trade name, image, etc in the marketing and promotion of their CDs, there has been no accounting to the Plaintiff detailing the transactions initiated by Unruly Productions nor has there been a payment to the Plaintiff for any revenue received from the exploitation of Ms. Edgerton's valuable intellectual property rights.  Compl. ¶ 34.  Any agency relationship that may have been established in the alleged Management Agreement while Ms. Edgerton was alive terminated upon her death.  Compl. ¶ 85.  Neither Shawn Caesar, Scott Rice, Unruly Productions nor Paul Gardner has any authorization to use Ms. Edgerton's trademark, image or any of her intellectual property.  Compl. ¶44.  Moreover, in the absence of a valid written agreement stating otherwise, they do not have any ownership rights or authorization to use or otherwise exploit Ms. Edgerton's

6

trademarks.  Compl. ¶ 44.  Instead, the parties have, without authorization, been disseminating CD

recordings using Ms. Edgerton's trademark and performance names, "K-Swift" and "Queen Club K-

Swift" to commercially sell and advertise for the commercial sale of CDs for their own financial gain to

the exclusion of the Estate of Khia Edgerton.  Compl. ¶ 45.

### B.  Applicable Legal Standards

1.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction contends the complaint

fails to allege facts upon which subject matter jurisdiction can be based.  Fed. R. Civ. P. 12(b)(1) *see*

*also* *Beckham v. National R.R. Passenger Corp.,* 569 F. Supp. 2d 542 (D. Md. 2008) citing *Adams v.*

*Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The burden is on the plaintiff to prove that subject matter

jurisdiction properly exists in the federal court.  *Mays Assoc. Inc. v. Euler*, 370 F. Supp. 2d 362 (D. Md.

2005); *see* *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  While the Plaintiff bears the

burden of proving subject matter jurisdiction, the court evaluating the facial challenge must accept as

true the factual allegations in the plaintiff's complaint, and the motion should be granted only if it

appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 174 F.Supp.2d 388, 391

(D.Md.2001).  The motion should be granted only if the material jurisdictional facts are not in dispute

and the moving party is entitled to prevail as a matter of law.  *Biktasheva v. Red Square Sports*, 366 F.

Supp. 2d 289, 294 (D. Md. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d

765 at 768 (4th Cir. 1990)).

2.  Rule 12(b)(6) Motion to Dismiss Conversion to Rule 12(c) Judgment on the Pleadings

Rule 12(b) provides that "[a] motion making any Rule 12(b) defenses shall be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b).  However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised "by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P.12(h)(2); *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 514-15 (2d ed.1990).  The Fourth Circuit has held, where defendants have moved for dismissal after filing their Answer, the Court will construe their Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999).  On September 1, 2009, Defendant filed an answer to Plaintiff's Amended Complaint.  Therefore, as a matter of motions practice and Fourth Circuit precedent, the defendant's motion should be viewed as a Rule 12(c) motion for judgment on the pleadings.

### 3.   Rule 12(c) Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss.  *see Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir.2002); *Fare Deals, Ltd. v. Glorioso,* 217 F.Supp.2d 670, 671 (D.Md.2002).  In reviewing a 12(c) judgment on the pleadings, the court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *see Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997) *citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 217-18 (4th Cir.1994); *Chisolm v. TranSouth Finan. Corp.,* 95 F.3d 331, 334 (4th Cir.1996).

In deciding a motion for judgment on the pleadings, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when reviewing 12(b)(6) motions to dismiss,

in particular, documents incorporated into the complaint by reference and matters of which a court may

take judicial notice.  *Tellabas, Inc. v. Maker Issues & Rights, Ltd.,* 551 U.S. 308 (2007).  To survive a

judgment on the pleadings, the plaintiff need merely allege facts, beyond doubt, in support of its claim

which entitle it to relief.  *see Conley v. Gibson,* 355 U.S. 41 (1957). The plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544

(2007).

## II.  THE COMPLAINT SUFFICIENTLY ALLEGES FACTS OF TRADEMARK INFRINGEMENT TO CONVEY FEDERAL JURISDICTION UNDER THE LANHAM ACT

### A.  Subject Matter Jurisdiction

Federal district courts have original jurisdiction on all civil actions that arise under the

Constitution, laws, or treatises of the United States. 28 U.S.C. § 1331.  Plaintiff's claim in Count II of its

Amended Complaint is brought under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Section

1125(a) confers federal question jurisdiction in federal courts pursuant to 28 U.S.C. § 1338.

Accepting each of the allegations of Defendants' violations of the Lanham Act as true, the

Complaint specifically alleges facts upon which this Court's subject matter jurisdiction is based pursuant

to Section 43(a).  The facts alleged in the complaint not only provide support for Plaintiff's claim for

relief under Section 43(a), but also provides this Court with subject matter jurisdiction over Plaintiff's

claims.  As the Complaint alleged the jurisdictional requirements for pleading in Section 43(a) claim,

Defendant's 12(b)(1) Motion to Dismiss on these grounds should be dismissed.

1.  The Complaint Does Not Fail for Omitting the Citation for the Statute Violated in the Lanham Act

In the factual allegations of the Complaint, Plaintiff alleges following Ms. Edgerton's death,

defendants released a product bearing Ms. Edgerton's trademarks in interstate commerce.  Compl.¶ 31.

In addition to the facts alleged in part one of the Complaint which constitute a violation of Section 43(a), Count II of the Complaint alleges defendants have been disseminating CD recordings using Ms. Edgerton's trademark for their own financial gain, causing confusion and deception as to the source of the CD.  Comp.¶ 45-46.  The complaint alleges numerous facts related to the Defendant's violations of Section 43(a).

Fed. R. Civ. P. 8(a), as construed by *Conley v. Green*, 355 U.S. 41 (1957) requires only "a short and plain statement of the claim, sufficient to give defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests."  Here, the Plaintiff has more than satisfied the requirement of Rule 8(a).  Case law holds, the failure in a complaint to cite a statute or cite the correct one, in no way affects the merits of a claim because factual allegations alone are what matters. *Albert v. Carovano*, 851 F. 2d. 561 (2d. Cir. 1988); *Northrop v. Hoffman*, 134 F. 3d. 41 (1997); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992); *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962 (7th Cir. 1992). In addition to identifying the defendants' actions which constitute fraud-violations of Lanham Act Section 43(a) in the factual allegations section, Count III identifies additional actions which violate the Section, giving each defendant in this action more than adequate notice of what the Plaintiff's claims are and the grounds upon which they rest.  Accordingly, this Court maintains jurisdiction to adjudicate Plaintiff's claims and the defendant's motion to dismiss on these grounds should be denied.

2.  <u>This Court has Subject Matter Jurisdiction Over this Action Irrespective of the Validity of the CD Agreement</u>

Regardless of whether the court ultimately finds that the CD Agreement is valid, the defendants' actions as alleged in the Complaint constitute trademark infringement under Section 43(a) of the Lanham Act, giving this Court jurisdiction in the matter.

The CD Agreement purports to give Defendants the right to use all of Ms. Edgerton's legal and professional names, trademarks, trade names and logos, Ms. Edgerton's likeness, identification and biographical material and the name and likeness of any person engaged by Ms. Edgerton to render services in connection with the CD Albums.  Compl.¶ 27.  Although Plaintiff alleges in Count I of the Amended Complaint that the CD Agreement is a forgery, uttered by Defendants, the court need not decide Count I in order to resolve Count III- Violation of the Lanham Act.

Even if the CD agreement is valid, the grant of Ms. Edgerton's intellectual property rights to the defendants terminated upon Ms. Edgerton's death.  All property rights once granted by Ms. Edgerton to the Defendants reverted to her estate.  Compl.¶ 47.  Thus, as alleged in the Complaint, when Defendants used Ms. Edgerton's trademark in the promotion and sale of their product, "Club Queen Swift's Greatest Hits", they violated the Lanham Act as they did not have the authority to associate Ms. Edgerton's mark with their product.

**B.  The Complaint States a Claim for Trademark Infringement Upon Which Relief may be Granted Under the Lanham Act**

Unlike other provisions in the Lanham Act, Section 43(a) protects against infringement even though the trademark has not been federally registered.  Thus, Section 43(a) does not require the plaintiff to plead or have a registered trademark.  *Perini Corp. v. Perini Constr. Inc.*, 915 F. 2d 121 (4th Cir. 1990); *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517 (4th Cir. 2002).  However, in order to prevail on claims of trademark infringement under federal law, a plaintiff is obligated to show the court, as a threshold requirement, that it had a valid, protectable trademark and that the defendant's use the trademark is likely to cause confusion among consumers.  *Synergistic Intern., LLC v. Korman*, 470

F.3d 162 (4th Cir. 2006); _Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc._, 43 F. 3d. 922, 930 (4th Cir. 1995).

Without these allegations of fact, if a plaintiff is unable to demonstrate that the mark is valid, protectable and likely to cause confusion under the Lanham Act, his claim must fail, _U.S. Search, LLC v. U.S. Search.com Inc._, 300 F.3d 517 (4th Cir. 2002).  Here, Plaintiff alleged its mark is valid, protectable and the defendant's use is likely to cause confusion among consumers.  As such, the Plaintiff adequately pled a cause of action for trademark infringement under Section 43(a) upon which relief by this Court can be granted.  Thus, Plaintiff's claim is established as a matter of law and the Defendant's 12(c) motion for judgment on the pleadings on these grounds should be denied.

1.  <u>The Complaint Adequately Alleges the Validity and Protectablity of the Trademarks</u>

Under the Lanham Act, "a trademark includes any work, name, symbol, device or any combination thereof… used by a person… to identify and distinguish his or her goods."  15 U.S.C. § 1127.  The Fourth Circuit requires that an unregistered trademark satisfy two requirements if its owner is to have a protectable interest in the trademark: 1) the mark must be used in commerce _Larsen v. Terk Technologies Corp._, 151 F. 3d 140 (4th Cir. 1998) and 2) it must be distinctive.  _Sara Lee Corp. v. Kayser-Roth Corp._, 81 F. 3d 455, 464 (4th Cir. 1996).  The Complaint satisfies both of these requirements and Plaintiff's trademarks are entitled to protection against trademark infringement under federal law.

a.  _The Complaint Sufficiently Alleges Defendant's Use of Plaintiff's Mark in Interstate Commerce_

The Lanham Act provides civil liability for any person who "uses in commerce" any false or misleading description or representation of fact in commercial advertising which misrepresents the nature, characteristics, or qualities of any person's services or commercial activities.  15 U.S.C. §

12

1125(a)(1)(B).  In order to receive protection under the Lanham Act, the plaintiff must state the allegedly infringing trademark was or is being used in commerce. *Larsen v. Terk Technologies Corp.*, 151 F. 3d 140, 146 (4th Cir. 1996).

The Amended Complaint explains the defendants' product, "The Club Queen: K-Swift's Greatest Hits," released after Ms. Edgerton's death bearing her trademarks, is now being sold by a number of vendors not only in the Baltimore area, but also throughout the United States , various internet outlets and a number of other countries.  Compl.¶ 33.  As Plaintiff pled the defendants used Ms. Edgerton's trademark in goods they produced and sold in interstate commerce, this element of validity and protectability of Ms. Edgerton's mark has been established.

b.  *The Complaint Sufficiently Alleged the Trademark was Distinctive*

To ascertain whether a mark is distinctive, the court must determine whether it is generic, descriptive, suggestive, arbitrary or fanciful. *Perini Corp. v. Perini Constr. Inc.*, 915 F. 2d 121 (4th Cir. 1990).  Fanciful (made-up words expressly created to serve as trademarks), arbitrary (common words applied in unfamiliar ways) and suggestive marks are inherently distinctive and thus receive the greatest protection against infringement.  *Sara Lee Corp v. Kayser-Roth Corp.*, 81 F. 3d 455, 464 (4th Cir. 1996).  An identifying mark is distinctive and capable of being protected if it is inherently distinctive *or* has acquired distinctiveness through secondary meaning. *Synergistic Intern., LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006) *citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).  Finally, plaintiff the must show that it has actually used the designation at issue as trademark.  *MicroStrategy, Inc. v. Motorola*, 245 F. 3d 335 (4th Cir. 2001).  Whether a mark is distinctive is a factual question resolved by the courts.  *Pizzeria Uno Corp*. v. *Temple*, 747 F.2d 1522, 1527-1528 (4th Cir. 1984).

13

Plaintiff's identification of Ms. Edgerton's marks, which are fanciful ("K-Swift") and arbitrary ("Club Queen K-Swift") provide the court sufficient facts to determine the marks are inherently distinctive and deserving of protection against infringement.  Plaintiff alleges the trademarks in question, "K-Swift" and "Club Queen K-Swift" were used by Ms. Edgerton since 1993 for her advertisements for performances, concerts and on recordings to identify her disc jockey services.   The names have appeared in close association with a clear reference to the entertainment services of Ms. Edgerton, and thus, attained service and trademark status exclusively owned by Ms. Edgerton, which are now a part of her estate.  Compl.¶¶ 41-43.  Thus, the Complaint alleged facts to justify a finding of the inherent distinctiveness of Ms. Edgerton's trademarks and that Ms. Edgerton used the designations as trademarks throughout her career.  The complaint adequately pled Ms. Edgerton's trademark was used in interstate commerce and is distinctive; as such, the Plaintiff has a valid, protectable interest in the mark which is deserving of protection against trademark infringement as afforded by federal law.

2.  <u>The Complaint Adequately Alleges Defendant's Use of the Mark is Likely to Cause Confusion Among Consumers</u>

In order to prevail on a fraud claim under Section 43(a) of the Lanham Act, the plaintiff must also show that the use of his or her trademark by the defendant is likely to cause confusion among consumers as to the affiliation, connection, or association between the plaintiff and defendant's goods or services or as to the plaintiff's participation in the origin, sponsorship or approval of the defendant's goods or services.  *See* 15 U.S.C. § 1125(a)(1)(A). Consumer confusion occurs when consumers believe the products or services offered by the parties are similar in some way or when consumers make an incorrect mental association between the involved commercial products or their producers.  <u>*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*</u>, 483 U.S. 552, 564 (1987).

The Fourth Circuit has established the following guiding factors in determining the likelihood of confusion as to the affiliation, connection, approval, sponsorship or association of a product: 1) the strength of the plaintiff's mark; 2) the degree of similarity between the marks; 3) the proximity of the products; 4) the likelihood that the prior owner will bridge the gap; 5) actual confusion; 6) the defendant's intent in adopting the mark; 7) the quality of the defendant's product; and 8) the sophistication of the buyers. _Perini Corporation v. Perini Construction, Inc_., 915 F.2d 121, 127 (4th Cir. 1990). The Fourth Circuit also holds that these factors in their entirety are not always determinative. In fact, the Court in _Pizzeria Uno Corp._ held it will generally apply the aforementioned factors, which indicate likelihood of confusion, but do so with caution as each of factors are not always relevant or equally emphasized in each case. _Pizzeria Uno_ at 1527. Additionally, the Fourth Circuit held, when a plaintiff's and defendant's marks are "substantially identical," a court need not examine the aforementioned factors in order to hold that the defendant is engaging in trademark infringement. _Polo Fashions, Inc_. v. _Craftex. Inc_., 816 F.2d 145, 148 (4th Cir. 1987).

In _Polo Fashions_, the two symbols in question were used in the same manner on the breast of knitted sports shirts bearing the image of a polo player mounted on a horse. The owner of the POLO, RALPH LAUREN and POLO BY RALPH LAUREN trademarks sought to enjoin the defendant from using the "substantially identical" mark on defendant's clothing products. Without examining any of the other factors, the Fourth Circuit found that the use of virtually identical marks made a finding of likelihood of confusion "so unassailable as to warrant the district court's entry of summary judgment [for trademark infringement] for the plaintiff." _Id_.

Here, the Complaint alleges the defendants released their CD containing the exact same mark used by Ms. Edgerton throughout her career and in the advertising and sale of her CDs. Compl.¶¶ 10;

12; 31; 45.  *see also* Compl. Ex. 8.  The likelihood of confusion is even more certain here than in <u>*Polo*</u>

<u>*Fashions*</u>, as the marks are not just 'substantially identical', they are identical. Thus, Plaintiff need not

prove that it sufficiently plead the additional factors which indicate a likelihood of confusion in the

Fourth Circuit.[1]  Defendants are using the exact trademarks owned by Ms. Edgerton for the exact same

purpose Ms. Edgerton used her marks: to identify her trademark in advertisements for performances,

concerts and on recordings to identify her DJ services "K-Swift" and "Club Queen K-Swift".  In fact,

defendants used Ms. Edgerton's trademarks for the sole purpose of confusing consumers into believing

the CD was indeed affiliated, connected, approved and sponsored by Ms. Edgerton.

Thus, Plaintiff sufficiently alleged the marks used by Ms. Edgerton are the same marks

Defendants used in the advertising, marketing and sale of the CD, likely to cause confusion in the

marketplace by consumers that Plaintiff was affiliated, connected to, approved, sponsored or was

associated with defendants' product.

### 3.  <u>Conclusion- The Complaint Establishes a Cognizable Trademark Infringement Claim Under Federal Law</u>

The Fourth Circuit has construed Section 43(a) of the Lanham Act to require, for federal claims

of trademark infringement for unregistered marks, the plaintiff show that it has a valid, protectable

trademark and that the defendant's use of the trademark is likely to cause confusion.  The Complaint

pled defendants' used Ms. Edgerton's mark on their product in interstate commerce and that Ms.

Edgerton's mark is inherently distinctive, affording the mark validity and protectability under federal

law.  Additionally, by pleading Ms. Edgerton's marks are the same marks defendants used to sell their

---

[1] The Complaint, however, did plead facts which indicate that the defendant's use of Ms. Edgerton's trademark is likely to cause confusion in the marketplace as to the affiliation, connection, approval, sponsorship or association of a product or service.  *see* Compl.¶¶ 10-11 (strength of the "K-Swift" and "Club Queen K-Swift" mark and ownership of the mark by Ms. Edgerton); Compl.¶ 31 (degree of similarity between the marks); Compl.¶¶ 31, 33 (proximity of the type of products using the mark); Compl.¶ 10 (inability of owner to bridge the gap in the confusion of the mark); Compl.¶ 32 (the defendants' intent in adapting the mark).

product were likely to cause confusion in the marketplace, Plaintiff has established a cognizable

trademark claim under federal law.  Therefore, the defendant's motion to dismiss the Complaint on

12(c) grounds should be dismissed.

### III. THE COMPLAINT STATES CLAIMS FOR RELIEF WHICH RELIEF MAY BE GRANTED UNDER THE LANHAM ACT SECTION 43(A)

Section 43(a) of the Lanham Act establishes two basis of liability: (1) false representations

concerning the origin, association or endorsement of goods or services through the wrongful use of

another's distinctive mark, name, trade dress or other device (otherwise known as "false association" or

"false endorsement") and (2) false representations in advertising concerning the qualities of goods or

services ("false advertising"). *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992).  Therefore,

to bring a claim under Section 43(a) of the Lanham Act, a plaintiff must allege a violation under either

of these grounds.  As the Complaint alleges violations by the defendants for both false advertising and

false endorsement, Plaintiff has stated a causes of action in which relief may be granted by this Court

under the Lanham Act Section 43(a).

### A.  The Complaint Alleged Violation of Section 43(a) -  False Endorsement by Defendants' Use of Ms. Edgerton's Trademark

To establish a claim for false endorsement under Section 43(a) of the Lanham Act, plaintiff must

show: 1) defendant used a word, term, name, symbol or device (hereinafter "designation") in connection

with goods or services; 2) in interstate commerce;[2] 3) where the designation is likely to cause confusion[3]

as to (a) the affiliation, connection or association of defendant with another person or (b) as to the origin,

---

[2] The defendants' use of the trademark in interstate commerce was previously addressed in Section II(A)(3)(a)(i).
[3] The defendants' use of the trademark which made it likely to cause confusion was previously addressed in Section II(A)(3)(b).

sponsorship, or approval of defendant's goods, services or commercial activities by another person; and 4) the plaintiff has been or is likely to be damaged by these acts.  *Holland v. Psychological Assessment Resources, Inc.*, 482 F. Supp. 2d 667 (D.Md. 2007); *see also Commins v. Discovery Commc'ns,* 200 F. Supp. 2d 512, 522 (D. Md. 2002).

### 1.   False Designation of Origin

The Complaint alleges defendants used Ms. Edgerton's trademark in connection with the goods they produced namely, the "Club Queen K-Swift: Greatest Hits" CD.  Compl.¶¶ 31; 33. Plaintiff supported the defendants' use of the mark by incorporating the CD cover, produced by Defendants, bearing Ms. Edgerton's trademark into the Complaint.  Compl. Ex. 8.  Finally, Plaintiff pled defendants used Ms. Edgerton's performance names for their own benefit in violation of the Lanham Act.  Compl.¶ 52.g

### 2.  Plaintiff's Damage

A complaint must allege damages in order to seek relief under Section 43(a) of the Lanham Act. Plaintiff must show an injury which establishes a causal link between any false statements or use of a designation and the injury alleged.  *Business Information Systems v. Professional Governmental Research & Solutions, Inc.,* 2003 WL 23960534 (W.D. Va. 2003); *Black & Decker, Inc. v. Pro-tech Power, Inc.,* 26 F. Supp. 2d 834, 863 (E.D. Va.1998).  The Complaint alleges defendants' obtained earnings through the sale of Ms. Edgerton's CDs bearing her trademark which were released following her death and Defendants signed a significant distribution deal with Koch Entertainment Distribution with Ms. Edgerton's recordings being the first CD released under the wide distribution deal.  *see* Compl.¶¶ 19; 31-32.  By operation of law, Plaintiff is entitled to receive accounting and or payments

from the proceeds from the CD defendants sold bearing Ms. Edgerton's name, likeness and trademarks. Plaintiff alleged that it has not received any accounting or payments from Defendants, though the CD continues to be sold throughout the world.  Compl.¶ 31; 34.  Thus, the Plaintiff alleged the injury, non-payment of the proceeds of the CD, which defendants' used by illegally using Ms. Edgerton's marks to sell their CDs.

**B.  The Complaint Alleged Violation of Section 43(a)- False Advertisement by Defendants' Use of Ms. Edgerton's Trademark**

To establish a claim for false advertising under the Lanham Act, a plaintiff must show: 1) that the defendant made a material false or misleading representation of fact, 2) in interstate commerce[4], 3) in connection with the commercial advertising or production of its product; 4) that is either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another (or) the goods, services or commercial activities of another person[5]; and 5) the plaintiff has been or is likely to be damaged by these acts.[6] *Scotts Co. v. United Industries Corp.*, 315 F. 3d 264 (4th Cir. 2002) *citing* *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F. 3d 302, 310-11 (1st Cir. 2002).

1.   Materially False or Misleading Representation of Fact

For liability to arise under the false advertising provisions of Section 43(a) of the Lanham Act, the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.  *Scotts Co. v. United Industries Corp.*, 315 F. 3d 264 (4th Cir. 2002) quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer*

---

[4] The defendants' use of the trademark in interstate commerce was previously addressed in Section II(A)(3)(a)(i).
[5] The defendants' use of the trademark which made it likely to cause confusion was previously addressed in Section II(A)(3)(b).
[6] Plaintiff's allegation of damages as a result of Defendants' violation of Section 43(a) of the Lanham Act were previously addressed in Section II(B)(1)(b).

_Healthcare, L.P.,_ 131 F. 3d 430, 434 (4th Cir.1997).  The Complaint alleges defendants' representation

is both false on its face and likely to mislead and confuse consumers.  First, the Complaint alleges the

defendants made a false representation in the advertising and sale, of their CD, "Club Queen K-Swift:

Greatest Hits" by using the professional name, likeness and trademark of Ms. Edgerton, though they had

no authority to do so.  Compl.¶ 31; 33; 52.  Second, the Complaint alleges the representations made by

the defendants on the CD had the effect of confusing and or misleading consumers' purchasing

decisions.  By using the name, "Club Queen K-Swift" on the CD, the defendants sought to influence and

affect consumers' purchasing decisions, by 1) incorporating Ms. Edgerton's trademarks on the CD to

make consumers believe Ms. Edgerton compiled and produced the CD as opposed to defendants  (_see_

Compl.¶ 31.) and 2) selling their CD in venues previously used by Ms. Edgerton to sell her sound

recordings, (_see_ Compl.¶ 32.) all for the purpose of encouraging consumers to purchase the CD for the

defendants' commercial gain.

2.  <u>Defendants' Representations Were Made in Connection with the Commercial Advertising of<br>Defendants' Product</u>

The Complaint alleges defendants' false representation was made on the "Club Queen K-Swift:

Greatest Hits" CD cover.  Compl.¶ 31 _see also_ Compl. Ex. 8.  As a CD cover's function is to advertise

the product within, the Complaint adequately alleges the defendants made the false representation in the

commercial advertising and promotion of the "Club Queen K-Swift: Greatest Hits" CD.

**IV.  THE COMPLAINT PLEADS FRAUD- VIOLATION OF THE LANHAM ACT SECTION<br>43(A) WITH SPECIFICITY AS REQUIRED BY FED. R. CIV. P. 9(B)**

**A.  Legal Standard of Review**

When reviewing a motion to dismiss under Fed. R. Civ. P. 9(b), the court, as with a 12(b)(6)

motion to dismiss, accepts as true the factual allegations of the complaint and draws all inferences in

20

favor of the pleader. *Mills v. Polar Molecular Corp.*, 12. F. 3d 1170, 1174 (1993); *IV E AFL-CIO Pension Fund v. Herrman*, 9 F. 3d 1049 (2d. Cir. 1993). The Complaint sufficiently alleged the facts surrounding the fraud of which defendants are charged, and his motion to dismiss on this ground should be denied.

### B.  Plaintiff's Allegations of Fraud Adhere to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." This rule is an exception to the liberal scope of pleadings allowed by Rule 8 of the Federal Rules. Still, with the heightened pleading requirement embodied in Rule 9(b), which is applicable in this case, the Plaintiff alleged the acts of fraud with sufficient particularity to withstand the defendant's Rule 9(b) motion to dismiss.

Case law, which has developed the requirements of Rule 9(b) further, holds, where the plaintiff alleges fraud, he must also plead: 1) the time, place and contents of the false representations; 2) the identity of the person making the misrepresentation; and 3) what he obtained thereby. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370 (4th Cir. 2008); *Harrison v. Westinghouse Savannah River Co.*, 176 F. 3d 776, 784 (4th Cir. 1999); *Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp 2d 652, 662 (E.D. Va. 2002). Although no federal appellate court has directly addressed the issue, numerous federal district courts have held that Rule 9(b)'s heightened pleading requirement apply to Lanham Act claims. *Collegenet, Inc. v. XAP Corp.*, 2004 WL 2303506 (D. Or.) (applying Rule 9(b) to Lanham Act claim where plaintiff alleged "knowing" and "intentional" conduct); *Sanderson v. Brugman*, 2001 WL 69986 (S.D. Ind. 2001) (holding that a claim under 15

21

U.S.C. § 1125(a) is akin to claim of fraud and subject to Rule 9(b)); _Fox Chem. Co. v. Amsoil, Inc._, 445 F.Supp. 1355, 1357 (D.Minn. 1978) (Lanham Act covers false advertising and is most clearly related to fraud).   Here, the Complaint and allegations of fraud under the Lanham Act more than satisfy the requirements of Rule 9(b) and the case law's further development of the Rule.

    1.  <u>The Complaint Adequately Pleads the Time, Place and Contents of the False Representations</u>

The Complaint alleges defendants' false designation of origin regarding Plaintiff's sponsorship, association or approval of the "Club Queen K-Swift: Greatest Hits" CD occurred in December 2008 when defendants released the CD in numerous retail stores and internet outlets.   Compl.¶ 31.   Likewise, the Complaint alleges defendants' false and misleading representations of Ms. Edgerton's trademark in the marketing, promoting and sale of the "Club Queen K-Swift: Greatest Hits" CD also occurred in December 2008 and is continuing. Compl. ¶¶ 31; 32.   In addition to the aforementioned specific allegations of fraud, by including and incorporating by reference Exhibit 8, which shows Defendants' promotion and advertisement of the CD bearing Ms. Edgerton's trademark, Plaintiff identified with particularity the content of the fraudulent misrepresentation relied upon in making the claim under Section 43(a).   Thus, the Rule 9(b) prong requiring pleadings to identify the time, place and contents of the false representations was met and sufficiently pled in the Complaint.

    2.  <u>The Complaint Adequately Pleads the Identity of the Persons Making the Misrepresentations</u>

The Complaint names as the defendants in the action four parties: UPI Holdings, Inc., Shawn Caesar, Scott Rice and Paul Gardner, II.   In addition to the case caption, the Complaint individually alleges, beginning at Compl.¶ 2, each of the individuals are defendants in this action.   Rather than listing each of the defendants by name in each of the nine counts of the Complaint, Plaintiff, stated, each of the

defendants would be named, "collectively, "Defendants." Compl. 2.  Every count alleged in the

Complaint is alleged against each defendant.  Fed. R. Civ. P. 8(a), as construed by <u>Conley v. Green</u>, 355

U.S. 41 (1957) requires only "a short and plain statement of the claim, sufficient to give defendant fair

notice of what the Plaintiff's claim is and the grounds upon which it rests."  Here, the Plaintiffs have

more than satisfied the requirement of Rule 8(a) and the identity prong of Rule 9(b).  In addition to

naming the defendants in the case caption, listing them individually by name in the Complaint, and

serving each defendant with a summons and complaint (addressed individually), the fraud claim

specifically states Defendants' use of Ms. Edgerton's performance names and artistic works violate the

Lanham Act. Compl.¶ 52.  This specific allegation against each of the defendants gives more than

adequate notice of what the Plaintiff's fraud claims under the Lanham Act are and the grounds upon

which they rest.  Thus, by identifying the speaker of the fraudulent representations, throughout the

Complaint and the fraud count, this Rule 9(b) prong was met and sufficiently pled in the Complaint.

### 3.   The Complaint Adequately Pleads What Defendants Obtained as a Result of the Misrepresentations

The Complaint alleges defendants' obtained earnings through the sale of Ms. Edgerton's

CDs bearing her trademark and defendants' signed a significant distribution deal with Koch

Entertainment Distribution wherein Ms. Edgerton's recordings would be posthumously released world-

wide by defendants.  *see* Compl.¶¶ 19; 31.  Thus, the Rule 9(b) prong requiring pleadings to identify

what the defendants obtained as a result of the misrepresentations was met and sufficiently pled in the

Complaint.

### 4.   The Complaint Adequately Pleads Facts Demonstrating Fraud by Mr. Gardner

The Complaint alleges Defendant Gardner produced the fraudulent CD Agreement to the

Edgertons, through The Roberts Law Group, representing the documents to be genuine.  Compl. ¶¶ 23,

28.  The Management Agreement and the CD Agreement are perfect duplicates and appear to be fraudulent.  Compl. ¶ 29.  The allegations of fraud by the Plaintiff against Mr. Gardner adhere to the heightened pleading requirements of Rule 9(b) by identifying Mr. Gardner sent the agreements to The Roberts Law Group in September of 2008 and Mr. Gardner defrauded the Plaintiff's as a result of his actions.   See Compl. ¶ 23, 38.  Therefore, the Complaint articulates claims against Mr. Gardner upon which relief may be granted by this Court.

     5.   <u>Conclusion- The Complaint Adheres and Exceeds the Heightened Rule 9(b) Requirements.</u>

     The heightened pleading requirement of Fed. R. Civ. P. 9(b) requires more facts of the fraud are alleged against defendants than what is normally required in pleadings.  By meeting the prongs established in this jurisdiction for sufficiently pleading a Rule 9(b) claim namely, that the plaintiff plead: 1) the time, place and contents of the false representations; 2) the identity of the person making the misrepresentation; and 3) what he obtained thereby, the Complaint contains the requisite facts and details of the fraud to overcome the defendants' Rule 9(b) motion to dismiss and prevail on its action for fraud-violation of Section 43(a) of the Lanham Act.  Therefore, the defendant's motion to dismiss the Complaint on Rule 9(b) grounds should be denied.

## V.  THE COMPLAINT SUFFICIENTLY ALLEGES COPYRIGHT INFRINGEMENT TO CONVEY FEDERAL JURISDICTION

### A.  Subject Matter Jurisdiction

     Federal district courts have original jurisdiction on all civil actions that arise under the Constitution, laws, or treatises of the United States. 28 U.S.C. § 1331.  Plaintiff's claim in Count IV of its Amended Complaint is brought under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq*.  28 U.S.C. §

1338 confers federal jurisdiction in federal courts in actions pertaining specifically to copyrights and other forms of intellectual property.

Accepting each of the allegations of Defendant's violations of the Copyright Act as true, the Complaint specifically alleges facts upon which this Court's subject matter jurisdiction is based pursuant to Section 101 *et seq.* The facts alleged in the complaint not only provide support for Plaintiff's claim for relief under the Copyright Act, but also provides this Court with subject matter jurisdiction over Plaintiff's claims. As the Complaint alleged the jurisdictional requirements for pleading in the Copyright Infringement claim, Defendant's 12(b)(1) Motion to Dismiss on these grounds should be dismissed.

    1.   <u>The Complaint Alleges Facts Sufficient to Meet the Jurisdictional Prerequisites Imposed by the Fourth Circuit in Federal Copyright Infringement Claims</u>

In order to prevail on a claim of copyright infringement under federal law, the Fourth Circuit maintains, the claim must meet the jurisdictional prerequisites for a suit under § 1338. In *Young v. City of Richmond*, 895 F.2d 967 (4th Cir. 1990), the court held, the requirement that an action "arise under" the Copyright Act is satisfied "if and only if the complaint is for a remedy granted by the Act, … or asserts a claim requiring construction of the Act, … or, at the very least, … presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Id.* at 970. In sum, there must be an allegation of copyright infringement along with a request for a remedy expressly provided by the Copyright Act. In *Young*, because the plaintiff properly alleged ownership of a copyright, defendant's acts amounted to copyright infringement under the Copyright Act and each count requested damages pursuant to the Act, the court held Young's complaint satisfied the definitive jurisdictional test. Here, the Complaint properly pled the necessary elements to satisfy the Fourth

Circuit's jurisdictional test, thus, Defendant's 12(b)(1) Motion to Dismiss on this ground should be dismissed.

   a.   *The Complaint Alleges Ms. Edgerton's Ownership of a Copyright, Defendants' Infringing*
        *Acts and Requests Damages Pursuant to the Copyright Act*

   The Complaint asserts Ms. Edgerton's copyright ownership by virtue of Ms. Edgerton being the sole creator of her artistic works and the individual who translated her craft onto a fixed tangible expression.  Compl. ¶¶ 65- 66.  The Complaint also properly asserts that the defendants' acts amounted to copyright infringement in that the Defendants have no ownership rights in the artistic works and failed to obtain authorization or a license from Ms. Edgerton to use them.  Compl. ¶ 68.  The Complaint describes such unauthorized use as the commercial sale of CD's of Ms. Edgerton's sound recordings without Plaintiff's permission.  Compl. ¶ 67.  Furthermore, the Complaint properly includes the Plaintiff's request for remedies expressly granted by the Copyright Act.  Pursuant to 17 U.S.C. §§ 502, 504 and 505, Plaintiff seeks an injunction of any further exploitation of Ms. Edgerton's artistic work and intellectual property, monetary damages, attorneys' fees and costs incurred by the Plaintiff and any such other relief deemed appropriate and just by the Court. *see* Compl. Count IV.  Thus, the Plaintiff alleges facts sufficient to satisfy the definitive jurisdictional test, conferring federal jurisdiction to this Court pursuant to 28 U.S.C. §1338 and the Copyright Act.

   2.   <u>Plaintiff has Proper Standing for Copyright Infringement under the Copyright Act</u>

   As a prerequisite to initiating a copyright infringement action under the Copyright Act, 17 U.S.C. § 411(a) requires preregistration or registration of the copyright.  Although the Fourth Circuit Court of Appeals has not directly addressed this issue, numerous district courts hold the registration requirement is satisfied upon the filing of the application with the U.S. Copyright Office ("registration upon application") and that receipt of an actual certificate of registration is not required for proper

26

registration.  *see* 2 NIMMER ON COPYRIGHT § 7.16[B][1] (1999); *see e.g.* <u>*Apple Barrel Prods., Inc.*</u>
<u>*v. Beard*</u>, 730 F.2d 384, 387-87 (5th Cir. 1984); <u>*Olan Mills, Inc. v. Linn Photo Co.,*</u> 23 F.3d 1345, 1349
(8th Cir. 1994).

 The Fourth Circuit also implicitly assented to the registration upon application approach in
<u>*Phoenix Renovation Corp. v. Rodriguez*</u>, 2007 WL 4443328 (4th Cir. 2007).  In that case, the Court of
Appeals affirmed the District Court's ruling and declined to determine that the District Court had erred
in allowing the copyright infringement action to proceed where standing had been based on the
registration upon application approach.  In the District Court case in <u>*Phoenix*</u>, the U.S. District Court for
the Eastern District of Virginia held copyright laws make a distinction between copyright registration
and receiving from the Copyright Office a certificate of registration. <u>*Id*</u>. at 514.  This distinction implies
that receipt of the certificate of registration is not considered to be definitive proof of the copyright
registration.  Based on this reading of the statutory language, the court ultimately determined that the
plaintiff's complaint, which alleged that it had applied for copyright registration of the document at
issue, was sufficient to meet the pleading requirements of Fed. R. Civ. P. 8 and the plaintiff was allowed
to proceed with the infringement claim.

 Here, the Complaint more than adequately alleges Plaintiff applied for copyright registration in
Ms. Edgerton's work.  Compl. ¶ 72; Compl. Ex. 10.  Plaintiff complied with the statutory requirement
regarding registration of the copyright by applying for copyright registration.  As such, Plaintiff satisfied
the registration requirement and may properly assert a claim for copyright infringement under the
Copyright Act.   Defendant's 12(b)(1) motion to dismiss on these grounds should therefore be
dismissed.

 3. <u>This Court has Subject Matter Jurisdiction over this Action Irrespective of the Copyright
Infringement Claim</u>

Section 1367 of the U.S. Code states in subsection (a) that:

> except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action… that they form part of the same case or controversy under Article III of the United States Constitution.

Even if this Court determines that the Plaintiff failed to properly plead a cause of action for copyright infringement under the U.S. Copyright Act, mandating Plaintiff's copyright related claims be governed by Maryland common law, federal subject matter jurisdiction is preserved through Counts II and III of the complaint. (*see* Count II- Copyright Infringement and Count III- Fraud – Violation of the Lanham Act).  Thus, if the court determines that federal subject matter jurisdiction is not available on the copyright infringement claim, jurisdiction will still be available through the Plaintiff's properly pleaded counts based on the Lanham Act.  As §1367 will allow for supplemental jurisdiction over the copyright infringement claims (if the court finds they should be governed under Maryland common law), Defendant's 12(b)(1) motion to dismiss on this ground should be dismissed.

### B.  The Complaint States a Claim for Copyright Infringement Upon Which Relief may be Granted under Federal Law

In order to prevail on claims of copyright infringement under federal law, the plaintiff is required to allege: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.  *Feist Publ'n, Inc. v. Rural Tele. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991).  Here, Plaintiff alleged facts sufficient to establish valid and protectable copyrights in Ms. Edgerton's works (*see* Compl. ¶¶ 65-66.) and that defendants unlawfully copied elements of Ms. Edgerton's original works. (*see* Compl. ¶¶ 67-70.)  As such, Plaintiff adequately pled a cause of action for copyright infringement under federal law upon which relief by this Court can be granted.  Thus, Plaintiff's claim is established

as a matter of law and the Defendant's 12(c) motion for judgment on the pleadings on these grounds should be denied.

### 1.   Plaintiff Properly Pled Ownership of a Valid, Protectable Copyright

Under the Copyright Act, copyright ownership vests in the authors of the work.  The author is generally the party who actually creates the work, the person who translates an idea into a fixed, tangible expression; such an individual owns a copyright and is entitled to protection.  17 U.S.C. § 101.  The Fourth Circuit requires that a plaintiff satisfy two requirements in order to have a protectable interest in the copyright: 1) the plaintiff must provide proof of originality and copyrightability and 2) compliance with the applicable statutory requirements.  *Darden v. Peters*, 488 F.3d 277, 285-86 (4th Cir. 2007).  The Complaint satisfies both of these requirements and Plaintiff's copyrights are entitled to protection against copyright infringement under federal law.

### a.   *The Complaint Sufficiently Alleges Ms. Edgerton's Works are Original*

In *Darden*, the court stated that a work is considered "original" if it was independently created by the author and possess at least a minimal degree of creativity.  The threshold level of creativity required for copyrightability is low such that the 'vast majority of works make the grade quite easily, as they possess some creative spark.  *Id.* at 286 (*citing Feist*, 499 U.S. at 345).  Pursuant to 17 U.S.C. § 103, the Copyright Act provides copyright protection for compilations and derivative works.  The copyright in a compilation or derivative work extends to material contributed by the author of such work.  *Id.*  Reading § 103 and the court's test for originality in *Darden*, an author of a compilation or derivative work has an original work and is entitled to copyright protection so long as the compilation or derivative independently created by the author is creative.

Ms. Edgerton's work is original.  The Plaintiff asserted that Ms. Edgerton was the sole creator of her artistic works, the individual who translated her craft onto a fixed tangible expression, as required by 17 U.S.C. § 101.  Compl. ¶¶ 64-65.  The term "sole creator" is analogous to the term "author" for the purposes of copyright ownership and protection.  The fact that other artists may have been "involved in her works" (Def.'s Mem. Supp. Mot. J. 15) is of no consequence.  The involvement of others in her work merely indicates Ms.  Edgerton authored compilations and derivative works, independently "provid[ing] 'intros' and 'outros' for the songs contained therein". Def.'s Mem. Supp. Mot. J. 15.   Ms. Edgerton's works were so new and creative that she "gained local notoriety for introducing local residents to club music".  Def.'s Mem. Supp. Mot. J. 2.  Therefore, the Complaint adequately alleged Ms. Edgerton, as the sole creator of her artistic works, created original work entitling her to copyright protection pursuant to provisions of the Copyright Act.

   b.   *The Complaint Sufficiently Alleges Compliance with the Statutory Requirements*

   The Copyright Act requires preregistration or registration in order for a valid copyright infringement claim to be initiated.  17 U.S.C. § 411(a).  Plaintiff alleged facts sufficient to satisfy this second prong of the ownership test.  The Complaint and Exhibits provide evidence of copyright registration.  Compl. ¶ 72; *see* Exhibit 10.  As Plaintiff complied with the copyright statute, it has retained the standing necessary to pursue the copyright infringement claim under federal law.  Thus, Plaintiff alleged originality and copyrightability of Ms. Edgerton's works and its compliance with the statute, stating a claim for which relief may be granted under federal law.

   2.   The Complaint Alleged Facts Sufficient to Establish Defendant's Copying of Original Elements of Ms. Edgerton's Work

   The second element required to substantiate a copyright infringement claim requires the plaintiff to show defendants copied constituent elements of the work that are original.  *Feist Publications*, 499

U.S. at 340.  In *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997), the court held to

satisfy this element of a copyright infringement claim, the alleged copier must have had access to the

work that he is claimed to have copied and that the copier used his access to copy the work.  *Id.* at 1169-

70.  Access (and copying) may be inferred when two works are so similar to each other and not to

anything in the public domain that it is likely that the creator of the second work copied the first.  *Id.* at

1171.

    The Complaint alleges the defendants, by virtue of their relationship with Ms. Edgerton, had

access to her works.  Compl. ¶ 12-13; 67-70.   The Complaint also alleges the defendants used their

access to Ms. Edgerton's work to copy the works after her death.  Compl. ¶ 31-32.  The infringing

product defendants created is an exact copy of the works Ms. Edgerton created during her life.  As

copying may be inferred where the works are similar, the Complaint satisfies this requirement.   The

works defendant is charged with infringing are the exact works Ms. Edgerton created independently.

As such, the Plaintiff has sufficiently asserted an inference of the Defendants' copying of the original

elements of Ms. Edgerton's work, thereby satisfying the second element required to substantiate a

copyright infringement claim under federal law.

    3.   Conclusion- The Complaint States a Valid Claim for Copyright Infringement Under Federal
            Law

    The Supreme Court held in order to prevail on claims of copyright infringement under federal

law, the plaintiff must alleged ownership of a valid copyright and copying of constituent the original

work.  *Feist*, 499 U.S. at 361.  By providing proof of originality and copyrightability of Ms. Edgerton's

works, compliance with the applicable statutory requirements, and the defendants' copying Ms.

Edgerton's works, the Complaint satisfies the prerequisites, entitling Plaintiff's to protection against

copyright infringement under federal law.  Defendant's 12(c) motion for judgment on the pleadings on this ground must therefore be denied.

### C.  The Complaint Provides Notice of When Defendants' Acts Began Infringing Upon Ms. Edgerton's Work

The CD Agreement purports to give defendants the right to sell Ms. Edgerton's CDs.  Compl.¶ 27.  Although Plaintiff alleges in Count I of the Amended Complaint that the CD Agreement is a forgery, uttered by defendants, the court need not decide Count I in order to resolve Count IV- Copyright Infringement.

Even if the CD agreement is valid, the grant of Ms. Edgerton's intellectual property rights in the CDs to the defendants terminated upon Ms. Edgerton's death.  All property rights once granted by Ms. Edgerton to the Defendants reverted to her estate.  Compl.¶ 47.  Thus, as alleged in the Complaint, any actual, implied, or apparent authority that may have allowed the defendants to act on Ms. Edgerton's behalf terminated upon her death.  *see* Comp.   Thus, Ms. Edgerton's rights in her artistic works reverted to her Estate and the continued, unauthorized sales of her sound recordings by the defendants constituted copyright infringement.[7]

### VI. CONCLUSION

Accordingly, Plaintiff, The Estate of Khia Edgerton, respectfully requests that this Court deny Defendant Paul Gardner's motion for judgment on the pleadings in its entirety given that, contrary to Defendant's arguments, the Complaint alleges facts sufficient to confer federal subject matter jurisdiction for copyright and trademark infringement and the Complaint states copyright and trademark claims upon which relief may be granted pursuant to federal law.

---

[7] Defendant claims entitlement to fair notice of when the defendants' acts became infringing acts. In fact, Plaintiff did provide the defendants with notice of the infringement in a cease/desist letter sent from The Roberts Law Group to Mr. Gardner on June 24, 2009 seeking that Defendants immediately cease selling Ms. Edgerton's work, which they do not have the rights to sell.

Respectfully Submitted,

Dated:  November 2, 2009                     /s/ *Michele Edwards*_____
                                            Michele Edwards
                                            Bar No. 17505
                                            The Roberts Law Group, PLLC
                                            1029 Vermont Avenue, Suite 300
                                            Washington, D.C. 20005
                                            Telephone:     (202) 347-9700
                                            Facsimile:      (202) 347-5225
                                            E-Mail: medwards@robertslawgroup.com
                                            *Attorneys for the Plaintiff*


                                            **KIANA M. JAMISON, ESQ.**
                                            **ON BRIEF**


                                            **ERIN D. MITCHELL, ESQ.**
                                            **ON BRIEF**

**IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| ESTATE OF KHIA EDGERTON (85091) | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-cv-01825 CCB |
| | ) | |
| UPI HOLDINGS, INC. D/B/A | ) | |
| UNRULY PRODUCTIONS, UNRULY RECORDS | ) | |
| AND UNRULY PRODUCTIONS, et. al | ) | |
| | ) | |
| Defendants | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the Plaintiffs' Memorandum at Law in Opposition of

Defendant Paul Gardner's Motion to Dismiss were served by first class mail, postage pre-paid this 2nd

day of November, 2009 to the following Defendants:

| | |
|---|---|
| UPI Holdings, Inc. D/B/A UNRULY RECORDS,<br>UNRULY PRODUCTIONS, U MANAGEMENT<br>7455 New Ridge Road, Suite N | Scott Rice<br>7455 New Ridge Road, Suite N<br>Hanover, MD 21076 |
| Shawn Caesar<br>5911 North Dakota Drive<br>Hanover, MD 21076 | Paul Gardner<br>10 N. Calvert Street, Suite 375<br>Baltimore, MD 21202 |

Dated: November 2, 2009

/s/ *Michele Edwards*_____
Michele Edwards
Bar No. 17505
The Roberts Law Group, PLLC
1029 Vermont Avenue, Suite 300
Washington, D.C. 20005
Telephone:     (202) 347-9700
Facsimile:      (202) 347-5225
E-Mail: medwards@robertslawgroup.com
*Attorneys for the Plaintiff*