IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF KHIA EDGERTON :
:
:
v. :
: Civil Action No. CCB-09-1825
UPI HOLDINGS, INC., et. al :
...o0o...

## MEMORANDUM

Now pending before the court are motions to dismiss brought by defendants Paul W. Gardner, II, Shawn Caesar, and Scott Rice[1] and a motion for default judgment brought by the Estate of Khia Edgerton ("plaintiff" or "the Estate"). The Estate has sued Mr. Gardner, Mr. Caesar, Mr. Rice, and UPI Holdings, Inc. d/b/a Unruly Productions, Unruly Records, and U Management ("Unruly Productions"), alleging several federal and state legal violations relating to the defendants' allegedly unauthorized production and distribution of Khia Edgerton's musical work. None of the defendants have replied to the plaintiff's memorandum in opposition to their motions to dismiss. For the reasons stated below, the defendants' motion to dismiss will be granted in part and denied in part and the plaintiff's motion for default judgment will be granted.

## BACKGROUND

As this is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the court "accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff[]." *Barbour v. Int'l Union*, 594 F.3d 315, 316 (4th Cir. 2010) (internal quotation marks omitted). Khia Edgerton was a popular Baltimore disc jockey ("DJ") who performed under the names "K-Swift" and "Club Queen K-Swift." Ms. Edgerton began performing in clubs under these

---

[1] All of the defendants are representing themselves. Mr. Gardner, however, is an attorney.

names from the age of 15 and gained a growing national fan base over the course of her life. In 2005, through Mr. Rice and Mr. Caesar's record label, Unruly Productions, Ms. Edgerton started selling compact discs ("CDs") containing mixes of songs that she had selected and arranged. Between 2005 and 2008, Ms. Edgerton released over 14 CDs. On July 21, 2008, Ms. Edgerton passed away unexpectedly after a diving accident.

The following day, Unruly Productions signed a national distribution deal with Koch Entertainment Distribution, enabling its products to be sold to major retailers throughout the country. Mr. Caesar announced shortly afterward that the first CD released pursuant to this distribution deal would be a compilation of Ms. Edgerton's mixes, entitled "The Club Queen: K-Swift's Greatest Hits." On July 28 and 29, Mr. Caesar and Mr. Gardner filed federal trademark applications with the United States Patent and Trademark Office for "K-Swift" and "Club Queen K-Swift."

When Ms. Edgerton's Estate contacted Mr. Caesar shortly after Ms. Edgerton's death to inquire about her business arrangements with Unruly Productions, Mr. Caesar and Mr. Rice informed the Estate that Ms. Edgerton had signed two agreements with Unruly Productions: a "Management Agreement" and an "Exclusive Mix CD and Compilation Agreement" (the "CD Agreement"). They also told the Estate they had established an escrow account where they held Ms. Edgerton's earnings. The Estate asked for copies of the agreements, which Mr. Gardner forwarded to them a month and a half later, along with records showing two $100 deposits into the escrow account. Under the Management Agreement, Unruly Productions was to receive 15 percent of Ms. Edgerton's gross weekly earnings. The contract also obligated Unruly Productions to keep accurate books and records of all Ms. Edgerton's transactions. The term of the Management Agreement was for one year with a four-year annual irrevocable option to be exercised at Unruly Productions'

discretion. Pursuant to the CD Agreement, Ms. Edgerton granted copyright ownership to her CDs, the right to sell the CDs to certain retailers, and the right to use her stage names, logos, and likeness in connection with the CDs to Unruly Productions. Prior to receiving these agreements from Mr. Gardner, the Estate had no knowledge of them. The Estate now alleges that the agreements are fraudulent because the signature pages on the two agreements appear to be identical.

Unruly Productions released "The Club Queen: K-Swift's Greatest Hits" in December 2008 and the CDs are currently sold throughout the country. Nevertheless, the plaintiff claims Unruly Productions has failed to keep track of Ms. Edgerton's earnings or make any payments to the Estate. The plaintiff Estate asserts that any agency relationship established between the defendants and Ms. Edgerton terminated upon her death and brings several federal and state claims to vindicate its rights with respect to Ms. Edgerton's musical work and stage names. Specifically, the Estate accuses the defendants of fraud (Count I), trademark infringement (Count II), violation of the Lanham Act (Count III), copyright infringement (Count IV), unfair competition and misappropriation (Count V), tortious interference with business relations (Count VI), breach of fiduciary duty (Count VII), and breach of contract with respect to the Management Agreement (Count VIII) and the CD Agreement (Count IX).

UPI Holdings, Inc. has failed to respond to the complaint and the Clerk has issued an Order of Default with respect to this defendant, pursuant to Fed. R. Civ. P. 55. The plaintiff now moves for default judgment against UPI Holdings, Inc. Given that this defendant was served with process, but has nevertheless "failed to plead or otherwise defend," default judgment will be entered against UPI Holdings, Inc. *See* Fed. R. Civ. P. 55.

The remaining defendants have filed motions to dismiss based on lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be

granted, under Fed. R. Civ. P. 12(b)(6). Mr. Gardner is the only defendant who has submitted a memorandum of law in support of his motion to dismiss. He argues primarily that the court lacks subject matter jurisdiction over the Estate's federal claims and thus should decline to exercise supplemental jurisdiction over the remaining state law claims. In the alternative, Mr. Gardner asserts that the federal causes of action should be dismissed because they fail to state claims upon which relief can be granted. Each issue will be addressed in turn.

## ANALYSIS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. County Commissioners of Carroll County*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the

plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Subject Matter Jurisdiction

Defendants first claim that the plaintiff's complaint should be dismissed for lack of subject matter jurisdiction. They argue that the court lacks subject matter jurisdiction over the plaintiff's copyright claim because the Estate has applied for copyright registration, but has not yet received a certificate of registration from the United States Copyright Office. Under 17 U.S.C. § 411(a), preregistration or registration is a prerequisite to filing an action for infringement of a copyright.[2]

---

[2] 17 U.S.C. § 411(a) states in relevant part:
>  Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration

The Supreme Court recently clarified, however, that this prerequisite is not jurisdictional. *See Reed Elsevier, Inc. v. Muchnick*, -- U.S. --, 130 S. Ct. 1237, 1241 (2010). Thus the issue of whether the plaintiff has satisfied the registration requirement simply by submitting a registration application to the Copyright Office will be analyzed under Fed. R. Civ. P. 12(b)(6), rather than under Fed. R. Civ. P. 12(b)(1).

Furthermore, the defendants assert that the plaintiff's claims arising under the Lanham Act, 12 U.S.C. § 1051 *et seq.*, should be dismissed for lack of subject matter jurisdiction. Mr. Gardner's primary argument is that because the plaintiff failed to cite in its complaint specific sections of the Lanham Act it believes the defendants have violated, this court lacks jurisdiction over these claims. The plaintiff clearly named the Lanham Act, however, in the section of its complaint describing the basis for jurisdiction. (*See* Pl.'s Compl. ¶ 6.) This satisfies the "well-pleaded complaint rule," whereby "federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law." *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006); *see also* 28 U.S.C. § 1331. Given the liberal pleading requirements of Fed. R. Civ. P. 8, the plaintiff need not specify particular sections of the statute to demonstrate that its claims arise under federal law. *See* Fed. R. Civ. P. 8(a)(1) (requiring only a "short and plain statement of the grounds for the court's jurisdiction"); *see also* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1209 (3d ed. 2004) (noting that "the great weight of authority makes it clear that a failure to name the particular statute, treaty, or provision of the Constitution under which the action arises is not fatal if the remainder of the complaint shows that a federal question

---

has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

actually is involved or relied upon by the pleader"). Accordingly, this court may exercise jurisdiction over the plaintiff's Lanham Act claims.

12(b)(6) Motion to Dismiss

*Copyright Infringement*

The defendants argue that the plaintiff has failed to meet the two elements of a copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To demonstrate ownership of a valid copyright, the plaintiff must provide "proof of originality and copyrightability." *See Darden v. Peters*, 488 F.3d 277, 285 (4th Cir. 2007) (internal quotation marks omitted). A work is original when it has been "independently created by the author (as opposed to copied from other works), and … possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. The Court has stated that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be." *Id.* (internal quotation marks omitted).

The defendants argue, however, that Ms. Edgerton's artistic work is not original because it is merely a compilation of other artists' songs. The Copyright Act specifies that copyrights may extend to compilations[3] and derivative works,[4] but "only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work…" 17 U.S.C. §

---

[3] A compilation is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Collective works are included within this definition. *Id.*

[4] The Copyright Act defines derivative work as "work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. In addition, "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" *Id.*

103(b). In *Feist*, the Court considered the originality of a compilation of facts and noted that "choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through copyright laws." *Feist*, 499 U.S. at 348. Nevertheless, "copyright protection may extend only to those components of a work that are original to the author." *Id.*

Following the Court's reasoning in *Feist*, a district court in the Southern District of New York held that the plaintiff's musical show, featuring three tenors singing a variety of unoriginal songs, was copyrightable. *See Caffey v. Cook*, 409 F. Supp. 2d 484 (S.D.N.Y. 2006). In *Caffey*, the defendants argued that the plaintiff's copyright was invalid because the show consisted of pre-existing copyrighted songs, which pervaded the plaintiff's work and for which the plaintiff never obtained consent from the owners of the copyrighted music. *See id.* at 495. The court, however, found that the plaintiff's selection and arrangement of songs, in addition to his creation of a small amount of dialogue between songs, warranted copyright protection as a compilation. *See id.* at 497. The court reasoned that these efforts entailed the "minimal degree of creativity necessary to merit copyright protection." *Id.* (internal quotation marks omitted). In accordance with § 103(b) though, the plaintiff's copyright was limited to the show's particular arrangement of songs and dialogue and not to the underlying copyrighted songs. *See id.*

Similarly, Ms. Edgerton selected and arranged the music in both her radio programs and club mixes. Indeed, her skill in these areas is what distinguished her from other radio DJs and brought her such fame. The mere fact that her work consisted of copyrighted songs does not

preclude her estate's infringement claim, as a factfinder could easily determine that she exercised the minimal degree of creativity required to prove originality.[5]

Finally, the defendants argue that the plaintiff has failed to allege facts sufficient to establish the second element of a copyright infringement claim: copying of the original work. Yet because defendants have moved to dismiss, rather than for summary judgment, the court may not consider, nor is the plaintiff required to present, evidence outside of the pleadings demonstrating similarity between the CDs produced by the defendants and Ms. Edgerton's work. The plaintiff need only allege that the defendants copied Ms. Edgerton's musical compilations. The Estate sufficiently alleged this element by asserting that the CDs released after Ms. Edgerton's death contained her artistic work. (*See* Pl.'s Compl. ¶¶ 32-33.)

The defendants also argue that the plaintiff's copyright infringement claim must be dismissed because the Estate has applied for copyright registration, but has not yet received, or been denied, a certificate of registration.[6] Although copyright in an original work exists from the moment of creation, the author must comply with the statutory requirements of the Copyright Act to bring a suit for infringement. *See* 17 U.S.C. § 302(a) (providing that copyright in a work "subsists from its creation"); 17 U.S.C. § 411(a).[7]

Courts throughout the country are split on the question of whether filing an application for registration of a copyright with the Copyright Office is sufficient to satisfy the registration

---

[5] Although the defendants argue that the plaintiff has failed to specify which part of Ms. Edgerton's work it believes to be protected by copyright, the statute and case law make clear that only Ms. Edgerton's arrangement, selection, and other original efforts with respect to the music compilations, and not the underlying songs, are copyrightable. *See* § 103(b); *Feist*, 499 U.S. at 348.

[6] According to a June 21, 2010 letter from the Estate, the Copyright Office has yet to grant or deny a certificate of registration. The Copyright Office has advised the plaintiff that it may take an additional six months for the copyright applications to be processed.

[7] Section 411(a) also permits infringement suits upon the preregistration of a copyright claim. The plaintiff, however, has not alleged that the work in this case was preregistered.

prerequisite for a claim of copyright infringement. *Compare Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013 (8th Cir. 2006) (characterizing § 411(a) as requiring a plaintiff to have delivered "the deposit, application, and fee" for registration to the Copyright Office before initiating suit for copyright infringement) (quoting *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994)); *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 365 (5th Cir. 2004) (finding the registration requirement satisfied upon the Copyright Office's receipt of the plaintiff's application, deposit, and fee); *Prunté v. Universal Music Group*, 484 F. Supp. 2d 32, 40 (D.D.C. 2007) (holding that "an infringement suit may be brought when a copyright application is completed and submitted to the United States Copyright Office"); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003) (concluding that a plaintiff "may commence an action for infringement as soon as the Copyright Office has received a proper application, fee and deposit" and that "actual certification by the Copyright Office is not necessary") *with La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1201 (10th Cir. 2005) (holding that "registration, or its refusal, requires more than the simple receipt of materials submitted by an author, and does not occur until the Register of Copyrights takes action"); *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 406-07 (S.D.N.Y. 2009) (observing the split among district courts within the Second Circuit and concluding that the filing of an application, fee, and deposit does not constitute "registration" under § 411(a)); *Jennette v. United States*, 77 Fed. Cl. 126, 131 (2007) (interpreting § 411(a) to require "actual copyright registration, or the denial of copyright registration…prior to bringing suit for copyright infringement"); *and Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1055 (C.D. Cal. 2004) (finding that "registration" does not occur under § 411(a) until the Copyright Office has issued a certificate of registration).

The Fourth Circuit has yet to interpret the meaning of "registration" under § 411(a), and district courts within this circuit remain divided. Two district courts have ruled that a plaintiff's submission of an application to the Copyright Office is sufficient to satisfy the registration requirement under § 411(a). *See Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 515 (E.D. Va. 2005), *aff'd*, 258 Fed. App'x 526 (4th Cir. 2007)[8]; *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F. Supp. 2d 630, 634 (M.D.N.C. 2004); *see also Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609, 623 (D. Md. 2001) (dismissing a copyright infringement claim because the plaintiff failed to allege that an application for copyright registration had been filed). Another judge in the District of Maryland, however, after careful consideration, held that § 411(a) requires actual registration or denial of registration by the Copyright Office. *See Mays & Assocs. v. Euler*, 370 F. Supp. 2d 362, 370 (D. Md. 2005).

Courts that have required plaintiffs to produce a certificate of registration have focused on the plain language of § 411(a) which states, in part, that no infringement action shall be instituted until "registration of the copyright claim has been made in accordance with this title." Section 411(a) then describes the process of registration as "where the deposit, application, and fee required for registration have been delivered to the Copyright Office ...." Thus some courts have reasoned that if Congress had intended the term "registration" to mean the process of applying for a

---

[8] The parties in *Phoenix Renovation* did not raise the question of whether application to the Copyright Office may satisfy the registration requirement of § 411(a) on appeal. Prior to the Supreme Court's recent decision in *Reed Elsevier*, however, the Fourth Circuit treated the registration requirement in § 411(a) as jurisdictional. *See Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283 (4th Cir. 2003). Therefore, had the Fourth Circuit disagreed with the district court and concluded that the plaintiff's mere application to the Copyright Office did not satisfy the registration requirement, it would have been obliged to raise the issue sua sponte, as it understood the prerequisite to be jurisdictional. *See* Fed. R. Civ. P. 12(h)(3) (noting that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (explaining that "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction").

certificate of registration, it would have used the same "deposit, application, and fee" language when describing the registration prerequisite. *See La Resolana Architects*, 416 F.3d at 1202; *Mays & Assocs.*, 370 F. Supp. 2d at 369.

Courts that require receipt or denial of a certificate of registration also look to U.S.C. § 410(a), which states that the Register of Copyrights shall register a claim and issue a certificate of registration after examination to determine "the other legal and formal requirements of this title have been met." Some courts interpret this provision as stating that registration is issued not upon the filing of an application, but upon examination of the application to ensure compliance with statutory requirements. *See La Resolana Architects*, 416 F.3d at 1201; *Loree Rodkin Mgmt. Corp.*, 315 F. Supp. 2d at 1055. Yet this provision may apply only to the requirements needed to obtain a certificate of registration, not to the requirements for filing an infringement suit. *See Iconbazaar*, 308 F. Supp. 2d at 634.

Other courts that require only application, however, have noted the language of § 410(d), which states that "[t]he effective date of copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office." *See Prunté*, 484 F. Supp. 2d at 40; *Iconbazaar*, 308 F. Supp. 2d at 634. These same courts also look to 17 U.S.C. § 408(a), which provides that copyright owners "may obtain registration of the copyright claim by delivering to the Copyright Office the deposit ... together with the application and fee." *See Prunté*, 484 F. Supp. 2d at 40; *Phoenix Renovation Corp.*, 403 F. Supp. 2d at 514; *Iconbazaar*, 308 F. Supp. 2d at 634. These two statutory provisions indicate that "registration" occurs upon application to the Copyright Office, not upon receipt of a certificate of registration.

Courts that find registration complete upon application also note the three year statute of limitations for copyright infringement actions. *See* 17 U.S.C § 507(b). Given that the Copyright Office's process of approving or denying copyright applications can be lengthy, copyright owners may encounter difficulty instituting their infringement actions in time if they must wait until their applications are approved or denied. *See Iconbazaar*, 308 F. Supp. 2d at 634; 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (Matthew Bender, rev. ed. 2009). Furthermore, the Copyright Office's ultimate decision on whether to grant a certificate of registration is of little import in the context of a copyright infringement suit, as the court may decide for itself whether the plaintiff owns a protectable copyright. *See Prunté*, 484 F. Supp. 2d at 40 (noting that "[b]ecause the language of [§ 411(a)] allows a party to file an infringement suit regardless of whether the Copyright Office actually registers the copyright upon examination of the party's application, 'it makes sense under the 1976 Act to refer to an *application for registration* as a condition to filing an infringement action'") (quoting *Nimmer on Copyright* § 7.16[B][1][a][i] (1999) (emphasis in original)).

As demonstrated by the above discussion, whether the registration prerequisite is satisfied by application alone is a close question. Because the prerequisite is no longer considered jurisdictional, the plaintiff's application is still pending, and there are state law claims that will remain, the court need not decide the question at this time. Accordingly, the court will proceed with the remaining claims and deny the motion to dismiss plaintiff's copyright claim without prejudice.

*Lanham Act*

The plaintiff appears to assert two claims under the Lanham Act: (1) trademark infringement (Count II), and (2) fraudulent procurement of a trademark (Count III). Although the plaintiff does

13

not cite specific sections of the Lanham Act in its complaint, this does not defeat the claims. *See* 5 Wright & Miller, *Federal Practice and Procedure*, § 1219 (noting that "it is unnecessary to set out a legal theory for the plaintiff's claim for relief"); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (discussing that "[n]otice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories") (emphasis in original). In any event, the plaintiff has since clarified that it brings the trademark infringement claim under 15 U.S.C. § 1125(a),[9] and the court will presume the fraudulent procurement claim arises under 15 U.S.C. § 1120.[10]

The Supreme Court explained in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003), that § 1125(a) does not create a cause of action against all forms of unfair competition. The section prohibits certain kinds of representations that could confuse consumers as to the trademark holder's association with another person or to the "origin, sponsorship, or approval" of goods or services. § 1125(a). Trademark infringement claims typically involve a person presenting his own work as someone else's ("passing off" or "palming off") or presenting

---

[9] 15 U.S.C. § 1125(a)(1) provides:
> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[10] This assumption is consistent with that of Mr. Gardner. (Gardner Mot. to Dismiss 24.) Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

someone else's work as his own ("reverse passing off"). *See Dastar*, 539 U.S. at 27 n.1 (defining "passing off," "palming off," and "reverse passing off"); *Centaur Comm'ns, Ltd. v. A/S/M Comm'ns, Inc.*, 830 F.2d 1217, 1220 (2d Cir. 1987) (explaining that the purpose of § 1125(a) "is to prevent consumer confusion regarding a product's source…and to enable those that fashion a product to differentiate it from others on the market") (abrogated on other grounds).

One leading trademark law treatise notes that if an author's work "is clearly still in copyright, then usually the Lanham Act claim is moot or subsumed in a successful copyright claim. This is because a successful copyright claim prevents any reproduction or distribution of the challenged literary property. A successful Lanham Act claim only makes defendant change the labeling, credits or title." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:77.50 (4th ed. 2010). In this case, the plaintiff's claim is more appropriately characterized as a copyright claim than a trademark infringement claim. The crux of the plaintiff's complaint is the defendants' allegedly unauthorized distribution of Ms. Edgerton's artistic work following her death. This case is about permission to distribute, not inaccurate labeling, credits, or titles on the CD. Thus the trademark infringement claim will be dismissed.

The Estate's fraudulent procurement claim also fails because the defendants have not procured registration of the trademarks "K-Swift" or "Club Queen K-Swift." *See Country Mutual Ins. Co. v. Am. Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir. 1989) (reasoning that § 1120 "makes sense when 'procure' is taken to mean 'obtain' and little sense when taken to mean 'apply for'"); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (dismissing § 1120 claim because the defendant had not yet procured a registration for the trademark at issue); *Dunn Computer Corp. d/b/a Steelcloud v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 831 (E.D. Va. 2001) (noting that "[t]he plain meaning of the phrase 'any person who shall

procure registration' is any person who has *obtained*, rather than simply *applied for*, registration of a mark"); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993) (holding that a claim under § 1120 accrued the day registration of the trademark was procured). Furthermore, in a May 11, 2010 letter, the defendants advised the court that they had abandoned their applications for trademark registration. Therefore, the plaintiff's fraudulent procurement claim will be dismissed.

*State Law Claims*

The plaintiff's remaining claims are for fraud, relating to the allegedly forged CD and Management Agreements; unfair competition and misappropriation; tortious interference with business relations; breach of fiduciary duty; and breach of contract, relating to the Management and CD Agreements. The defendants assert that the court lacks subject matter jurisdiction over these claims. Yet because the court possesses subject matter jurisdiction over the plaintiff's federal copyright and trademark claims, the court may exercise its supplemental jurisdiction over the plaintiff's remaining state court claims pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction is appropriate here because these state law claims relate to the same underlying facts that form the basis of the federal claims: the defendants' allegedly unauthorized production and distribution of Ms. Edgerton's work. *See* 28 U.S.C. § 1367(a) (providing that a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that a state and federal claim form one constitutional "case" when they "derive from a common nucleus of operative fact").

Although the federal trademark claim will be dismissed, and the copyright claim may be premature, the court may retain supplemental jurisdiction over the state law claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, -- U.S. --, 129 S. Ct. 1862, 1866 (2009) (explaining that "[a] district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary").

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. A separate Order follows.


July 1, 2010  /s/
Date  Catherine C. Blake
 United States District Judge