**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ESTATE OF KHIA EDGERTON | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-09-1825 |
| | : | |
| | : | |
| UPI HOLDINGS, INC. D/B/A | : | |
| UNRULY RECORDS, | : | |
| UNRULY PRODUCTIONS, AND | : | |
| U MANAGEMENT, et al. | : | |
| | : | |

**MEMORANDUM**

This action arises from a business relationship between the late Khia Edgerton and a

record label, UPI Holdings, Inc. d/b/a Unruly Productions, Unruly Records, and U Management

("Unruly Productions"). After Ms. Edgerton's death, the Estate of Khia Edgerton ("plaintiff" or

"the Estate") brought suit against Unruly Productions and the individuals Shawn Caesar, Paul W.

Gardner II, and Scott Rice, alleging federal and state law violations stemming from defendants'

production and distribution of Ms. Edgerton's musical work. On July 1, 2010, this court ruled on

motions to dismiss by Caesar, Gardner, and Rice, allowing some but not all of the claims against

them to proceed. The court granted a default judgment against Unruly Productions on multiple

claims, including copyright infringement. Now pending before the court are motions for

summary judgment filed by Caesar, Gardner, and Rice. Caesar has also filed a separate

document with the court, styled as a motion for summary judgment on any damage award, on

behalf of Unruly Productions. No hearing is necessary. *See* Local Rule 105.6. For the

following reasons, the motions filed by defendants Caesar, Gardner, and Rice will be granted.

1

The motion filed on behalf of Unruly Productions will be denied, but summary judgment will be granted to Unruly Productions with regard to damages and costs, and the case will be closed.

## BACKGROUND

This court's opinion on defendants' motions to dismiss recounts the Estate's allegations. (ECF No. 30)  To provide background for the summary judgment motions now before the court, those facts and allegations are repeated here in part.

Khia Edgerton was a popular Baltimore disc jockey ("DJ") who performed under the names "K-Swift" and "Club Queen K-Swift."  Ms. Edgerton began performing in clubs under these names from the age of 15 and gained a growing national fan base over the course of her life.  In 2005, through Mr. Rice and Mr. Caesar's record label, Unruly Productions, Ms. Edgerton started selling compact discs ("CDs") containing mixes of songs she had selected and arranged. Between 2005 and 2008, Ms. Edgerton released over 14 CDs.  On July 21, 2008, Ms. Edgerton passed away unexpectedly after a diving accident.

The following day, Unruly Productions signed a national distribution deal with Koch Entertainment Distribution, enabling its products to be sold to major retailers throughout the country.  Mr. Caesar announced shortly afterward that the first CD released pursuant to this distribution deal would be a compilation of Ms. Edgerton's mixes, entitled "The Club Queen: K-Swift's Greatest Hits."  On July 28 and 29, Mr. Caesar and Mr. Gardner filed federal trademark applications with the United States Patent and Trademark Office for "K-Swift" and "Club Queen K-Swift."  Unruly Productions released "The Club Queen: K-Swift's Greatest Hits" in December 2008, and, according to plaintiffs, began selling the CDs throughout the country.

When Ms. Edgerton's Estate contacted Mr. Caesar shortly after Ms. Edgerton's death to inquire about her business arrangements with Unruly Productions, Mr. Caesar and Mr. Rice informed the Estate that Ms. Edgerton had signed two agreements with Unruly Productions: a "Management Agreement" and an "Exclusive Mix CD and Compilation Agreement" (the "CD Agreement"). Under the Management Agreement, Unruly Productions was to receive fifteen percent of Ms. Edgerton's gross weekly earnings. The contract also obligated Unruly Productions to keep accurate books and records of all Ms. Edgerton's transactions. The term of the Management Agreement was for one year with a four-year annual irrevocable option to be exercised at Unruly Productions' discretion.  Pursuant to the CD Agreement, Ms. Edgerton granted copyright ownership to her CDs, the right to sell the CDs to certain retailers, and the right to use her stage names, logos, and likeness in connection with the CDs to Unruly Productions.

On July 14, 2009, the Estate brought suit in this court against the defendants.  The complaint, as amended, alleged that defendants forged the Management Agreement and the CD Agreement.  (Am. Compl. ¶ 36, ECF No. 6.)  The Estate claimed it had no knowledge of the Management Agreement or the CD Agreement prior to receiving them from the defendants subsequent to Ms. Edgerton's death, and it claimed that the documents were fraudulent because the signature pages on the two agreements appear to be identical. (*Id.* at ¶¶ 28–29.)  Even if the documents were not forged, the Estate alleged, the defendants failed to abide by the terms of the agreements because they had not provided the Estate with an accounting of CD sales or with payment of any resulting royalties. (*Id.* at ¶34.)  Based on these factual allegations, the Estate brought an action in this court accusing the defendants of fraud (Count I), trademark

3

infringement (Count II), violation of the Lanham Act (Count III), copyright infringement (Count IV), unfair competition and misappropriation (Count V), tortious interference with business relations (Count VI), breach of fiduciary duty (Count VII), and breach of contract with respect to the Management Agreement (Count VIII) and the CD Agreement (Count IX).

Individual defendants Caesar, Gardner and Rice responded to the amended complaint by jointly filing an answer and then later filing individual motions to dismiss. (ECF Nos. 8, 18, 19, 21.)  Defendants alleged both lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6). Unruly Productions failed to respond to the complaint at all, and the plaintiff moved for entry of a default judgment against the company.  On July 1, 2010, after considering the various motions, this court dismissed the claims for trademark infringement (Count II) and violation of the Lanham Act (Count III), but allowed all the other claims against Caesar, Gardner and Rice to proceed.  (ECF No. 30.)  The court also entered a default judgment in favor of the Estate against Unruly Productions on all of the same counts that survived against the individual defendants. (ECF No. 32.)  That order granted judgment on each of the surviving counts, "plus damages, costs and disbursements."  (*Id.*)

Subsequent to those July 2010 rulings, the court issued a scheduling order.  That order was eventually amended to allow the parties until January 12, 2011, to complete discovery. (ECF No. 38.)  The plaintiff did not serve interrogatories and requests for production of documents on the defendants until January 11, 2011.  (ECF No. 41.)  Defendants declined to respond because no time was available before the discovery deadline to do so.  (ECF No. 45.) For the same reason, this court denied the plaintiff's motion to compel discovery.  (ECF No. 49.)

On September 9, 2011, the three individual defendants filed *pro se* motions for summary judgment, arguing the Estate had "failed to produce any evidence" to support its allegations. (ECF Nos. 50–52.)   Defendant Caesar also signed a separate fourth motion for summary judgment on behalf of Unruly Productions, arguing that no evidence of damages had been provided and thus that the court should allow no further action against the company.  (ECF No. 53.)  The Estate filed an opposition brief in response to Unruly Productions' motion, but did not file anything in response to the individual defendants' motions.   (ECF No. 54.)   Unruly Productions has not filed a reply.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the facts and draw reasonable inferences 'in the light most favorable to the

party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)

(alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the

court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–

79 (4th Cir. 1993) (internal quotation marks omitted).


## ANALYSIS

The court will grant summary judgment for defendants Caesar, Gardner and Rice, as it

appears the plaintiff has abandoned its claims against them.  While the plaintiff responded with

an opposition brief to defendant Unruly Productions' motion for summary judgment, the plaintiff

did not respond at all to the motions filed by defendants Caesar, Gardner and Rice.  A plaintiff's

failure to respond to a summary judgment motion may constitute waiver or abandonment of a

claim.  *See, e.g., Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1246–47 (D. Md. 1997).

Plaintiff's abandonment of these claims is further evidenced by the fact that over six months

passed after this court's original July 9, 2010, scheduling order without the plaintiff having

propounded any discovery.

Unruly Productions' motion for summary judgment, however, was improperly filed.  On

July 1, 2010, this court granted default judgment against Unruly Productions on the Estate's

claims of fraud and counterfeiting, copyright infringement, unfair competition and

misappropriation, tortious interference with business relations and breach of fiduciary duty.

(ECF No. 32.)  Unruly Productions did not move to set aside this default judgment.  Now, over a

year later, defendant Shawn Caesar has signed and filed this motion for summary judgment on

behalf of Unruly Productions.  Caesar is not an attorney, however, and no attorney has signed

this motion as counsel for Unruly Productions.  Local Rule 101.1 (a) of this district states that

"all parties other than individuals must be represented by counsel."[1]  Thus, without

representation by an attorney, Unruly Productions may not file a motion for summary judgment

before this court.

While Unruly Productions' motion for summary judgment was improperly filed, the

circumstances nonetheless dictate that this court grant summary judgment *sua sponte* to Unruly

Productions on the question of monetary damages and attorney fees and costs.  Despite six

months of time for discovery, the Estate failed to timely serve defendants with interrogatories,

notice of depositions or requests for production of documents.   In February 2011, the plaintiff

reported to the court that it had subpoenaed retailers and received responses.  (February 25, 2011,

Status Report, ECF No. 42.)  But when the defendant's summary judgment motion presented the

plaintiff with an opportunity to respond by including information provided by these retailers, the

plaintiff failed to do so.  In responding to Unruly Productions, the plaintiff referred only to the

exhibits attached to the amended complaint.  Where, as here, a claim's proponent has been given

notice and a reasonable opportunity to be heard, a district court may properly grant summary

judgment *sua sponte*.  *See U.S. Development Corp. v. Peoples Federal Sav. & Loan Ass'n*, 873

F.2d 731, 735–36 (4th Cir. 1989).

Summary judgment is also warranted on the Estate's request for attorney fees and costs.

Maryland courts generally follow the "American rule," in which each party is responsible for its

---

[1] Local rules "have the force of law." *Hollingsworth v. Perry*, --- U.S. ----, ----, 130 S. Ct. 705, 710 (2010).

own legal fees, s*ee Weichert Co. of Maryland, Inc. v. Faust*, 19 A.3d 393, 400 n.2 (Md. 2011),

but Maryland Rule 1-341 creates an exception.  Rule 1-341 allows that:

> [i]n any civil action, if the court finds that the conduct of any party in maintaining
> or defending any proceeding was in bad faith or without substantial justification
> the court may require the offending party or the attorney advising the conduct or
> both of them to pay to the adverse party the costs of the proceeding and the
> reasonable expenses, including reasonable attorney's fees, incurred by the adverse
> party in opposing it.

Md. R. 1-341.  An award of counsel fees pursuant to Rule 1–341 is, however, "an extraordinary

remedy, which should be exercised only in rare and exceptional cases." *Thomas v. Capital Med.*

*Mgmt. Associates, LLC*, 985 A.2d 51, 71 (Md. App. 2009) (internal quotation marks and

citations omitted).

This is not one of those rare and exceptional cases.  The imposition of attorney fees under

Rule 1-341 "requires an explicit finding that a claim or defense was in bad faith or without

substantial justification." *Zdravkovich v. Bell Atlantic-Tricon Leasing, Corp.*, 592 A.2d 498, 503

(Md. 1991).  "The record must reflect that the trial judge made the requisite findings, as well as

the basis for those findings." *Id.*  Here, the Estate prevailed by default judgment because

defendant Unruly Productions took *no action at all* in its defense.  If Unruly Productions took no

action at all, then there is no basis on which this court can conclude that the company's defense

was made in bad faith or without substantial justification.

The court must also consider whether attorney fees are justified under Section 505 of the

Federal Copyright Act, which provides that:

> [i]n any civil action under this title, the court in its discretion may allow the
> recovery of full costs by or against any party other than the United States or an
> officer thereof. Except as otherwise provided by this title, the court may also
> award a reasonable attorney's fee to the prevailing party as part of the costs.

8

17 U.S.C. § 505.  As the language of the statute suggests, attorney fee awards in copyright cases

"are not to be made as a matter of course but, rather, as a matter of the court's discretion."

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488, 498 (4th Cir.

1996) (citing *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 (1994)).  The Fourth Circuit has

instructed district courts, in exercising this discretion, "to consider: (1) the motivation of the

parties; (2) the objective reasonableness of the legal and factual positions advanced; (3) the need

in particular circumstances to advance considerations of compensation and deterrence; and (4)

any other relevant factor presented." *Id*.

    As discussed above in connection with Md. Rule 1-341, it is not possible for the court to

weigh the motivation of the defendant, or the objective reasonableness of the legal and factual

positions advanced by the defendant, because the defendant failed to appear in this case and

default judgment was awarded.  To the extent that the court has concluded, as a matter of law,

that Unruly Productions violated the Copyright Act, some damage award would seem to be

necessary to appropriately deter future violations.  On the other hand, the failures of plaintiff's

counsel to properly litigate this case—and the resulting lack of success in securing a damage

award—do not suggest that compensation is appropriate here.  Accordingly, the court will not

hold Unruly Productions responsible for the plaintiff's attorney fees and other costs.

    In declining to award monetary damages, fees, and costs, the court does not disturb the

earlier default judgment against the defendant corporation.  Pursuant to the Estate's request for

injunctive relief in its amended complaint, the court will enjoin further exploitation of Ms.

Edgerton's artistic works and intellectual property, and specifically will void both the alleged

management agreement and the CD agreement between Khia Edgerton and UPI Holdings, Inc.,

Unruly Records, Unruly Productions, U Management, and any other proprietary name through

which the defendant Unruly Productions does business.  The judgment therefore ends any

alleged fiduciary relationship, power of attorney, or any other rights or privileges enumerated in

those two documents as to the name, likeness, work product, or royalties of Khia Edgerton.

Neither UPI Holdings, Inc., Unruly Productions, Unruly Records, U Management, nor any

officer or designee of those entities can claim rights as to the name, likeness, work product or

royalties of Khia Edgerton arising from those two documents or from any other source.

     A separate order follows.


December 28, 2011                                     /s/
Date                                            Catherine C. Blake
                                                United States District Judge